WILLIAM B. BRAXTON *v.* STATE OF MARYLAND

[No. 408, September Term, 1970.]

*Decided March 16, 1971.*

The cause was argued before MURPHY, C.J., and ANDERSON and ORTH, JJ.

*David B. Allen* for appellant.

*Clarence W. Sharp, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Howard L. Cardin, State's Attorney for Baltimore City,* and *Anton Keating* and *Arrie W. David, Assistant State's Attorneys for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

Standing trial before a jury in the Criminal Court of Baltimore on charges of robbing each of Edward Brown and Jessie Peoples with a deadly weapon on 8 March 1970, William Benjamin Braxton called Albert Johnson to testify on his behalf. Johnson said he had known Braxton for 16 months, was familiar with the neighborhood in which he lived and knew "his reputation for honesty and truthfulness in the community in which he lives. * * * He has a reputation for good character and honesty, trustworthy." He had never "heard people speak badly of him." This testimony came in without objection. He then gave testimony tending to give Braxton an alibi, in substance that he was with Braxton about the time of the commission of the robberies. On cross-examination

he said that "friends of mine and friends of [Braxton]" had told him Braxton was "an honest and truthful person." Braxton testified in his own behalf. There was no evidence elicited of a prior criminal record. At the close of all the evidence, after argument to the jury, the trial court gave its instructions. The charge covered the points usually covered, including the statement that the jury were "the sole judges of the facts in this case and credibility of the witnesses, and you are the judge of how much weight you ought to give to the testimony of all the witnesses representing both sides." Pointing out that it was the duty of the jury to determine which of the two versions before it were correct, the State's which tended to show by the identification of the victims that Braxton was one of the robbers, and the defense's which tended to show by Braxton's denial and the alibi evidence that he was not, the court again said it was the "job and duty" of the jury in so determining "to decide upon the credibility of the witnesses." At the conclusion of the charge the transcript reads:

"(Counsel approached the Bench and noted the following exceptions, out of the hearing of the Jury.)

MR. CHIARIELLO (Defense Counsel): I respectfully except to the refusal of the Court to grant my instruction number one as to the weight the Jury may give to evidence of character of the Defendant. Will that instruction be placed in the file?

THE COURT: Yes, it is in the file.

MR. CHIARIELLO: And I advance my argument. I believe, that the decisions of this State are that evidence of good character goes to the very heart of the case as to guilt or innocence. I think it is proper that at least a part, if you decide not all, of that instruction should be given.

THE COURT: The record ought to note you made a very full argument on that point to the

Jury, although I refuse to grant your request for instruction."

The instruction requested read as follows:

"The Court instructs the jury that relative to the testimony pertaining to the character of one of the defendants in respect to those traits of character which ordinarily would be involved in the commission of a crime like that charged in this case, I would instruct you as follows:
Such evidence of good character is regarded as relevant to the question whether the defendant is innocent or guilty of the crime charged, because the jury may, if its judgment so directs, reason that it is improbable that a person of good character in such respects would have conducted himself as alleged."

The jury found Braxton guilty of each robbery as charged. On appeal he claims that the court erred in refusing to instruct the jury "concerning the legal significance of the evidence then before them about [his] character."

It has been ofttimes stated as established in this State "* * * that in criminal cases, where the defendant is a witness in his own behalf, he thereby puts his character in issue, and may be asked on cross-examination if he has been convicted of crime." *Burgess v. State,* 161 Md. 162, 169. See *Taylor v. State,* 226 Md. 561, 566-567; *Niemoth v. State,* 160 Md. 544, 556; *Huber v. State,* 2 Md. App. 245, 257. This is so because it is competent for any parties to the proceedings to prove by legal evidence the conviction of any witness of an "infamous" crime.[1] Code, Art. 35, § 10. Thus when a defendant testifies as a witness, his credibility as a witness may be attacked. Although he is the defendant, if he assumes the role of a

1. But the prior convictions need not be restricted to infamous crimes or crimes involving moral turpitude. They are admissible if they involve offenses having some tendency to impeach credibility as a witness. *Gunther v. State,* 4 Md. App. 181.

witness he may be attacked as such, and cannot claim immunity from that attack on the ground that he has not put his character in evidence. 1 Wharton's *Criminal Evidence*, 12th Ed., § 221, pp. 458-459. Therefore, "character" within the contemplation of the rule is confined to truth and veracity, the prior convictions going to credibility and being used to impeach, *Holbrook v. State*, 6 Md. App. 265, as having a tendency to show that the defendant is not to be believed, *Hurley v. State*, 6 Md. App. 348.[2]

As distinguished from the limited concept of character within the impeachment rule as relating only to credibility, a defendant may always offer evidence of his good character and to prove that his character was such as to make it unlikely that he would have committed the act charged against him. The defendant does not put his "character" in this frame of reference in issue by merely taking the stand as a witness. It is put in issue, however, when he states that he has good character or a good record, or offers direct evidence of good character. 1 Wharton's *Criminal Evidence*, 12th Ed., § 221, pp. 458-459. Wharton discusses the rule:

> "The defendant is not required to testify as a witness before offering character evidence on his own behalf. He may call witnesses for that purpose although he does not himself testify as a witness.
>
> The offering of character evidence on his behalf is a privilege of the defendant, and the prosecution cannot comment on the failure of the defendant to produce such evidence.
>
> The State cannot show the bad character of the accused until the accused has raised the issue by offering evidence of good character. Once the defendant raises the issue of his character, the

---

2. Where the character of a witness-defendant is impeached by proof of prior convictions, he may be supported by evidence of good character, but it must relate to his character for truth. *McLaughlin v. State*, 3 Md. App. 515.

prosecution may then offer evidence of the defendant's bad character. * * *

Neither the defendant nor the prosecution may offer evidence of general good or bad character. To be relevant, it is necessary that the character be confined to an attribute or trait the existence or nonexistence of which would be involved in the noncommission or commission of the particular crime charged. This, of course, depends upon the moral wrong involved in the commission of the crime charged.[3] * * *

Evidence relating to the good or bad character of the accused must be confined to proof of general reputation in the community or communities in which the accused has lived. His reputation among his business associates or his place of business or employment is generally inadmissible.

The witnesses to the defendant's character must show that they have knowledge of his reputation in the community.

In proving character, it is not relevant for the defendant to give evidence of particular acts unless they tend to disapprove some fact put in issue.

On direct examination a witness cannot be asked whether he ever heard anything said against the defendant's reputation, but only whether he knew the defendant's reputation within the community and whether the reputation was good or bad. Both the prosecution and the defendant are limited to what the defen-

---

3. "It is irrelevant to show the defendant's reputation for honesty and integrity in a prosecution for adultery; for truth and veracity, or peace and quietude, in a prosecution for statutory rape; for good military conduct in a rape prosecution; for truth and veracity in a robbery prosecution; or for honesty and integrity, in a murder prosecution; for morality and sobriety in a prosecution for a false bank report entry; or for reliability in business in a prosecution for the malicious destruction of property." 1 Wharton, *supra*, § 221, p. 460.

dant's neighbors say about him, or how he is generally accepted, received, or regarded by them. Evidence that the defendant has never been arrested is inadmissible. The prosecution cannot prove bad character by evidence of particular acts." *Id.*, §§ 221-222, pp. 456-463.

As to the weight and effect of character evidence Wharton says, § 231, pp. 490-491:

"Evidence of the existence of good character is not in itself a defense to a crime, but when proved, it should be taken into consideration in connection with all the other evidence in the case, and be given such weight under all the facts and circumstances of the case as it merits in the judgment of the jury. Evidence of good character is to be considered by the jury in the same manner as any other evidence in the case. It is not merely collateral evidence, but may, in itself, raise such a doubt as to require the acquittal of the defendant.

If the jury believe that the defendant is guilty beyond a reasonable doubt, he must be convinced in spite of his otherwise good character."

See *Allison v. State*, 203 Md. 1, 7-8; *Comi v. State*, 202 Md. 472, 478-479; *Berger v. State*, 179 Md. 410, 413 in which the Court referred with approval to *Commonwealth v. Nagle*, 157 Mass. 554, 32 N. E. 861 as saying that, "while witnesses may testify that an accused has the general reputation of possessing traits of character which would likely restrain him from the commission of the crime alleged, they cannot testify that he has not been in the habit of committing offenses of a similar nature."

We have noted that Johnson's testimony of his knowledge of Braxton's reputation in the community in which he resided came into evidence without objection. Thus

there was before the jury that Braxton had a reputation for "good character and honesty, trustworthy." [4] We cannot say that a reputation for being honest and trustworthy is irrelevant in a prosecution for robbery. From the lower court's remarks defense counsel apparently fully argued to the jury that since Braxton had the reputation of being endowed with such traits it would be unlikely that he would commit armed robbery, but the court refused to instruct the jury at all on the point.[5] In *Noel v. State*, 202 Md. 247, 252, the Court said that the propriety of an instruction "as to the consideration and weight" to be given the testimony of character witnesses was generally recognized. It observed that under the federal practice, while failure to instruct on the point was not reversible error in the absence of a request for such an instruction, where there was a request for instruction that was technically erroneous, the court should have included a correct instruction in its charge. We think that Braxton, having requested an instruction with respect to the evidence of his good character, was entitled to an instruction that the evidence should be taken into consideration by the jury in connection with all the other evidence in the case and, in arriving at their verdict of guilt or innocence, given such weight under all the facts and circumstances of the case, including the credibility, as determined by the jury, of the witness testifying as to Braxton's reputation, as it merits in the judgment of the jury. The point was not covered in the charge as

---

4. That Johnson had never heard people speak "badly" of Braxton was neither relevant nor material in establishing a general reputation for possessing traits of character which would likely restrain Braxton from committing armed robbery.

5. In *Hardison v. State*, 226 Md. 53, 62 the Court, rejecting an argument that since defense counsel had informed the jury as to the law, anything the trial judge would have said would have been purely repetitious, said: "This overlooks the requirement of Maryland Rule 739 b [now Rule 756 b] * * * and that a statement or instruction by the trial judge carries with it the imprimatur of a judge learned in the law, and therefore usually has more force and effect than if merely presented by counsel. It is proper for jurors to look to a judge who is clothed with the presumption of impartiality to instruct them in an advisory manner as to what is the law of the State in relation to the case before them."

given. Maryland Rule 756 b; *Gaskins v. State,* 7 Md. App. 99, 105. The judgment must be reversed.

We have no need to reach the other question presented. We note, however, that it goes to the credibility of the two victims, each of whom made a positive judicial identification of Braxton as one of the robbers, and the weight to be given the identification. These were matters for the jury. *Bieber v. State,* 8 Md. App. 522; *Williams v. State,* 5 Md. App. 450.

> *Judgments reversed; case remanded for a new trial.*