# ERIC C. HALLENGREN *v.* STATE OF MARYLAND

[No. 146, September Term, 1971.]

*Decided January 19, 1972.*

44

The cause was argued before MURPHY, C. J., and ORTH and GILBERT, JJ.

*Harold Buchman* for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Stephen L. Miles, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

Appellant, a public school teacher, was found guilty by a jury in the Criminal Court of Baltimore of (1) violating Maryland Code, Article 27, Section 121 by (a) disturbing a certain neighborhood by loud and unseemly noises, and (b) by using obscene language upon or near a public street within the hearing of persons then and there passing; and (2) violating Article 27, Section 123 (c) by acting in a disorderly manner to the disturbance of the public peace upon a designated public street. The court sentenced appellant to pay a fine of

$100.00 and thirty days imprisonment for the Section 121 convictions, and imposed a consecutive sentence of sixty days and a $50.00 fine for the Section 123 conviction. The jail sentences were thereafter suspended and appellant was released on probation for one year upon condition of good behavior and payment of fines and court costs. On appeal, appellant claims that the statutes under which he was convicted are unconstitutional; that the court committed error in failing to properly instruct the jury; that there was a merger of offenses; and that because the evidence was legally insufficient to support his convictions, the court erred in overruling his motions for judgments of acquittal.

Evidence adduced at trial showed that wide-ranging disorders punctuated Baltimore's annual Flower Mart on May 13, 1970.[1] The trouble began around noon, and a force of 150 police officers were ordered to the scene. Police and other witnesses for the State described what occurred. One officer testified that large crowds were "running wild" through the street and grass plots. Other officers testified that police and old women were being assaulted; that disorderly people were running around shouting; that missiles were flying through the air; that persons were being stabbed; that youths were fighting among themselves; that one girl had been stripped of her clothing; that Flower Mart stands were being kicked in. There was evidence showing that order was generally restored at approximately 1:30 p.m., but that sporadic outbreaks of disorder and violence occurred at various times and in various areas within the Flower Mart's confines during the remainder of the afternoon. At approximately 4:00 p.m., the Flower Mart was closed. Thereafter, a large crowd of persons began throwing lemons, rocks, and bottles at the police. A line of seventy-five officers, some mounted on horses, was formed to move the disorderly crowd from the area. Appellant was in the crowd of persons which the police were endeavoring to disperse. He was arrested at 4:45 p.m.

---

1. The event attracted between 50,000 and 100,000 people.

Seven police officers testified to observing appellant at the Flower Mart. Several of the testifying officers thought they first saw appellant between 2:00 p.m. and 3:00 p.m.; other officers fixed the time between 3:00 p.m. and 4:00 p.m. One of the arresting officers said that he first saw appellant sometime after 4:00 p.m. The officers were generally in agreement as to appellant's activities. They placed him in the crowd of persons at the Flower Mart and said that with fist clenched over his head he was loudly exhorting the crowd to resist and kill the police. One officer heard appellant shout:

"This is a people's park; Drive the mother fucking pigs out; drive them out now!"

Other officers testified that appellant urged the crowd not to move, but to "kill the pigs," to "get the fucking pigs," and to "Fuck those God-Dammed pigs." One officer testified that appellant threw a commercial snowball at another officer, striking him in the face. He fixed the time of this event at approximately 2:00 p.m. Another officer said appellant threw a stone and something resembling a miniature whiskey bottle at him. He thought this incident occurred sometime after 3:00 p.m. Another officer testified that he attempted to apprehend appellant, but he was unable to follow him into the crowd. The officers who arrested appellant on the street at 4:45 p.m. testified that he said that he had not meant to throw the bottle.

Witnesses testifying on appellant's behalf, including the principal of his school and a fellow teacher, said that he could not have left his teaching job earlier than 3:20 p.m. or arrived at the Flower Mart before 4:00 p.m. Two other witnesses saw appellant riding in an automobile near the Flower Mart between 4:15 p.m. and 4:25 p.m. Other witnesses testifying on appellant's behalf said in effect that appellant was guilty of no misconduct, but that the police overreacted and used excessive force in their efforts to disperse the crowd.

Testifying in his own behalf, appellant said that he

had been active in peace and anti-war demonstrations. He said that he did not arrive at the Flower Mart until 4:15 p.m., at which time he observed that the police were forcibly attempting to move a crowd of persons away from the area; that he was unable to ascertain the reason for the police action, became angry, called the police pigs, and ran from the scene when police chased him. He denied any other name calling, missile throwing, or any other misconduct.

Two other witnesses, testifying in appellant's behalf, said that appellant had a good reputation in the community for truth and veracity and that based thereon, each would believe him under oath.

## I

The question of the constitutionality of Sections 121 and 123 was not raised prior to or during trial and, consequently, the issue was not decided by the lower court. In these circumstances, the constitutional question is not properly before us. *Vuitch v. State,* 10 Md. App. 389; *Luthardt v. State,* 6 Md. App. 251; *Iozzi v. State,* 5 Md. App. 415; *Woodell v. State,* 2 Md. App. 433. To the extent that the constitutional question was considered on appellant's motion for a new trial, we do not deem the denial of the motion to be properly before us. *Vuitch v. State, supra; Pinkney v. State,* 9 Md. App. 283; *Johnson v. State,* 3 Md. App. 105. We nevertheless note that all presumptions favor the constitutionality of a duly enacted statute and it will not be declared unconstitutional unless it plainly contravenes the federal or state constitutions. *Woodell v. State, supra.* We also note our previous decisions finding, as a matter of constitutional law, Section 123 neither vague, indefinite, nor overbroad. See *Luthardt v. State, supra; Bacheller v. State,* 3 Md. App. 626. See also *Lynch v. State,* 2 Md. App. 546.

## II

Based on the testimony of the character witnesses that appellant had a good reputation for truth and veracity

in the community in which he resided, he requested the court to instruct the jury as follows:

> "In determining whether the prosecution has proven his case beyond a reasonable doubt you must consider the character testimony offered by the defendant. It is substantive evidence and must be considered together with all other evidence offered in this case. Character testimony also may in and of itself create the doubt in your minds sufficient to cause your finding the defendant not guilty of each and every count."

Relying on *Braxton v. State*, 11 Md. App. 435, appellant claims that the court's refusal to so instruct the jury constituted reversible error.

In *Braxton*, the accused was charged with robbery with a deadly weapon. He called a witness in his behalf who testified, without objection, that the accused had a good reputation in the community for "good character and honesty, trustworthy." Based on this testimony, Braxton requested the court to instruct the jury that such evidence of his good character "is regarded as relevant to the question whether the defendant is innocent or guilty of the crime charged, because the jury may, if its judgment so directs, reason that it is improbable that a person of good character in such respects would have conducted himself as alleged." We held that the court erred in not giving the requested instruction, reasoning that Braxton was entitled to offer evidence of his good character as proof that it was unlikely that he would have committed the armed robbery with which he was charged. We noted that to be relevant character evidence must be confined to an attribute or trait, the existence or non-existence of which would be involved in the non-commission or commission of the particular crime charged. With respect to the weight and effect of such character evidence, we said that while not in itself a defense to a crime, it should, when proved, be taken into consideration in connection with all the

other evidence and afforded such weight under all the facts and circumstances of the case as it merits in the judgment of the jury. We noted that evidence of good character is not merely collateral evidence, but may in itself raise such a doubt as to require the acquittal of the defendant. We concluded that Braxton's reputation for "good character and honesty, trustworthy" was not irrelevant in a prosecution for robbery. The case was a close one, and we observed that Braxton argued to the jury that since he was endowed with such good character traits, it was unlikely that he would commit armed robbery. We concluded, in the circumstances of the case, that Braxton was "entitled to an instruction that the [good character] evidence should be taken into consideration by the jury in connection with all the other evidence in the case and, in arriving at their verdict of guilt or innocence, given such weight under all the facts and circumstances of the case, including the credibility, as determined by the jury, of the witness testifying as to Braxton's reputation, as it merits in the judgment of the jury."

Unlike the factual situation in *Braxton,* the testimony pertaining to appellant's good reputation for truth and veracity was not relevant to demonstrate that it was unlikely that he would commit the crimes with which he was charged. A person whose reputation for truth and veracity is good is no less likely a candidate to violate Sections 121 and 123 than a person whose reputation for those traits is bad. A good reputation for truth and veracity is a character trait relevant to credibility, and we think it plain from the record that appellant's only purpose in offering such testimony was to support or bolster his own credibility as a witness in order to convince the jury that he, and not the police, should be believed. While appellant had a right to prove that he possessed traits of character which would entirely restrain him from committing the crimes alleged, *Comi v. State,* 202 Md. 472, *Berger v. State,* 179 Md. 410, *Nelson v. State,* 5 Md. App. 109, and could, in view of

the nature of the offenses charged against him, have undertaken to prove that his reputation for peace and quietude was good, see *Nixon v. State,* 204 Md. 475, he did not pursue this line of defense. Instead, he limited his inquiry of the character witnesses to appellant's reputation for truth and veracity, expressly acknowledging to the court "that's about all I can ask, your Honor, under the law." We think the limitations imposed by "the law" to which appellant had reference were those first enunciated in *Vernon v. Tucker,* 30 Md. 456, 462, namely that:

> "Where the character of the witness is impeached by matter brought out on the cross examination, or by evidence *aliunde* as to character, the witness may be sustained by evidence of good character; but it must, in either case, amount to an impeachment of the character of the witness for truth."

See also *Sloan v. Edwards,* 61 Md. 89; *McLaughlin v. State,* 3 Md. App. 515. Although it is questionable from the record in this case that appellant's character was impeached or his character assailed in the sense contemplated by the rule in *Vernon* and its progeny, the evidence of his good reputation for truth and veracity came in without objection.[2] But even assuming its admissibility to enhance appellant's credibility as a witness, he would not thereby be entitled to a jury instruction that such evidence could be taken into consideration not only in determining whether the State had proved him guilty beyond a reasonable doubt, but could "in and of itself create the doubt in your minds sufficient to cause your finding the defendant not guilty of each and every count." While the propriety of a jury instruction "as to the consideration and weight" to be given the testimony

---

2. The authorities are nearly unanimous in holding that the mere fact that a witness's testimony is contradicted by opposing testimony does not warrant the introduction of evidence as to his reputation for truth and veracity. See *Vernon v. Tucker, supra;* 29 Am. Jur. 2d *Evidence,* Section 341; *Kirby v. State,* 220 P. 74 (Okla.); Anno., 15 ALR 1065 and 33 ALR 1220.

of character witnesses is well recognized, *Noel v. State,* 202 Md. 247, *Braxton v. State, supra,* the court properly refused in the circumstances of this case to grant the requested instruction. The court did instruct the jury that it had the function of passing upon the truth of the testimony given by the various witnesses and the weight to be given to it. The judge made specific reference in his instruction to the testimony of the two character witnesses. We thus find no error in the court's advisory instructions to the jury.[3]

## III

Appellant claims that his several convictions under Section 121 merged into his disorderly conduct conviction under Section 123.[4] Specifically, he claims that the crimes of disturbing a neighborhood by making loud and unseemly noises, and using obscene language on the street, were the very elements essential to and compris-

---

3. The ordinary method of proving character is by inquiring of the witness whether he is acquainted with the reputation of the accused in the community in which he lives for honesty, morality, humanity, or other trait indicated by the nature of the charge, and if he answers "yes," what that reputation is. *Wentz v. State,* 159 Md. 161. But, as we in effect pointed out in *Braxton,* where the character trait in question is irrelevant, no jury instruction, such as the one sought in the present case, would be proper. See footnote 3 in *Braxton* at p. 440, which notes "[i]t is irrelevant to show the defendant's reputation for honesty and integrity in a prosecution for adultery; for truth and veracity, or peace and quietude, in a prosecution for statutory rape; for good military conduct in a rape prosecution; for truth and veracity in a robbery prosecution; or for honesty and integrity, in a murder prosecution; for morality and sobriety in a prosecution for a false bank report entry; or for reliability in business in a prosecution for the malicious destruction of property." Nor would veracity be a relevant character trait to demonstrate that it was unlikely that the accused was a receiver of stolen property. *People v. Trahos,* 232 N. W. 357 (Mich.). While a reputation for peaceableness may be relevant to show inconsistent character in a murder case, it is not relevant to show the defendant's credibility as a witness. McCormick on Evidence, Section 158. Nor would a defendant's reputation as a peaceful or law abiding citizen be a relevant character trait in a case involving a charge of incest. *Wentz v. State, supra.* On the other hand, veracity may be a relevant character trait in a perjury case. *Edgington v. United States,* 164 U. S. 361.

4. Appellant received concurrent sentences for his Section 121 convictions and makes no argument that one merged into the other.

ing his conviction for disorderly conduct under Section 123.

In *Drews v. State*, 224 Md. 186, the Court of Appeals held that the gist of the crime of disorderly conduct under Section 123, as it was in the cases of common law predecessor crimes, "is the doing or saying, or both, of that which offends, disturbs, incites, or tends to incite, a number of people gathered in the same area." The court noted that the offense would include failure to obey a policeman's lawful command to move on when not to do so may endanger the public peace. To like effect, see *Harris v. State*, 237 Md. 299; *Sharpe v. State*, 231 Md. 401; *Luthardt v. State, supra*. The jury could have concluded from the evidence that in addition to making loud and unseemly noises, and uttering obscene language within the hearing of persons passing on the street, appellant's conduct in urging the murder of police officers, his clenched-fist gestures in support of his exhortations, his refusal to obey reasonable police commands, and his stone and bottle throwing activity, constituted a violation of Section 123, as charged in the indictment. In these circumstances, there would be no merger of the Section 121 offenses into the Section 123 conviction. See *Price v. State*, 261 Md. 573; *Brown v. State*, 8 Md. App. 462; *Tender v. State*, 2 Md. App. 692. The fact that appellant was engaged in a continuous sequence of criminal acts obviously does not mean that there must be a merger of all offenses committed by him within that time.

## IV

Contrary to appellant's contention, we think there was legally sufficient evidence of appellant's guilt of the crimes charged under Sections 121 and 123 to carry the case to the jury. See *Williams v. State*, 5 Md. App. 450.

Appellant claims that the court should have granted his motions for judgment of acquittal because the jury, by acquitting him of other offenses with which he was charged, *i.e.*, assault and inciting to riot, necessarily concluded that there was no evidence legally sufficient to jus-

tify conviction under Sections 121 and 123.[5] While we see no inconsistency in the jury's verdict, it is the law of Maryland that a conviction on one count need not be vacated because of an inconsistent acquittal on another count. *Ledbetter v. State,* 224 Md. 271; *Leet v. State,* 203 Md. 285; *Moore v. State,* 3 Md. App. 676. Indeed, the rule has been applied in a case claiming inconsistency between a jury verdict of innocent of disorderly conduct but guilty of assault. *Williams v. State,* 204 Md. 55.

*Judgments affirmed.*

---

5. The assault charge was based on the allegation that appellant threw a commercial snowball at a police officer.