## JAMES WILLIAM HENNESSY, JR. *v.* STATE OF MARYLAND

[No. 66, September Term, 1977.]

*Decided October 18, 1977.*

560

The cause was argued before MOORE, LOWE and LISS, JJ.

*Robert C. Heeney* and *John M. Quinn*, with whom were *Heeney, McAuliffe, Rowan & Abell* on the brief, for appellant.

*F. Ford Loker, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County*, and *Philip H. Armstrong, Assistant State's Attorney for Montgomery County*, on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

Any appeal found in this appeal of James William Hennessy, Jr. imparts more remorseful concern than legal deficiency. Two young men, formerly friends, became

estranged by the apparent attentions of a young lady. The deterioration of their friendly relations resulted in the death of one and the manslaughter conviction of the other. It is apparent from the relatively lenient sentence of five years (of which only 18 months need be served) that all the tangential circumstances were considered fully by Judge John J. Mitchell, who imposed the sentence after appellant was convicted by a jury in the Circuit Court for Montgomery County.

Appellant was a slightly built 23-year-old college student who had been impaired by a cleft palate and deformed lip affecting his speech, swallowing and appearance. This condition had been treated periodically for over a decade until 1971. The victim had for two or three weeks been antagonistically aggressive toward appellant after a misunderstanding over a girl. Appellant's evidence of the victim's conduct just prior to his death would support a conclusion that the victim was assaulting appellant when he was fatally stabbed by appellant. It was upon such evidence that appellant's primary defense of self-defense was premised.

He contends here that it was improper for the court to have submitted the second degree murder charge to the jury, over his motion for judgment of acquittal, because although he had introduced the element of self-defense, it was not negated by the State. The issue, however, appears to be moot or, at worst, harmless beyond a reasonable doubt, see *Dorsey v. State*, 276 Md. 638, in light of the not guilty verdict rendered by the jury. See *Comi v. State*, 26 Md. App. 511, 520-521.

That notwithstanding, we would still see no error here. Appellant concedes by silence that there was sufficient evidence to sustain a manslaughter verdict, but argues that because the State did not affirmatively negate this self-defense testimony, he was entitled to what amounts to a judicially declared holding of self-defense as a matter of law. That is, of course, absurd. *Gilbert v. State*, 36 Md. App. 196. The factfinder may simply choose not to believe the facts as described in that, or any other, regard, *Jacobs v. State*, 6 Md.

App. 238, 242, and the very fact that a large knife was used, causing the death of an unarmed man, raises in itself the issue of excessive force even if appellant's account had been believed. "The law is clear that although a person may defend himself, even to the extent of taking life to repel the attack of an aggressor, it is equally well settled that he cannot use more force than is necessary." *Ware v. State,* 3 Md. App. 62, 65.

Appellant further contends that he should have been permitted to introduce a series of photographs showing his facial deformities as a child (age 4) and their progressive improvement through treatment that terminated at age 14. He explains that:

> "The admission of the photos was intended to further explain and describe to the Jury the treatment afforded the Defendant since 1959 by Dr. Bowdoin Davis, as set out in the two letters by the Doctor admitted into evidence and thus to explain the Defendant's state of mind at the time of the occurrence."

The admissibility of photographs is ordinarily within the sound discretion of the trial court. *Bagley v. State,* 232 Md. 86, 94. Moreover, the purported purpose of emphasizing to the jury appellant's abnormal apprehension over injury to his face, was already accomplished through the testimony of appellant's doctor, his mother and himself. The pictures were of borderline relevance at best, but, on the other side of the coin, were provocative of sympathy from a "this was your life" type of preview. Our review of the record and of the photographs does not indicate that the refusal to admit photographs 10 to 20 years old was "plainly arbitrary", *Corens v. State,* 185 Md. 561, 570, nor even an abuse of discretion.

Finally, appellant asks:

> "Was the Trial Court's Refusal to Instruct the Jury that Good Character and Reputation of the Appellant in and of Itself May Be Sufficient to

Create a Reasonable Doubt of Guilt, Reversible Error?"

The answer is no.

Appellant excised from *Hallengren v. State,* 14 Md. App. 43, 49, one sentence of our multi-page analysis of *Braxton v. State,* 11 Md. App. 435, where we had reversed the trial court for not granting a similar requested instruction. That sentence pointed out that:

"We [had] noted [in *Braxton*] that evidence of good character is not merely collateral evidence, *but may in itself raise such a doubt as to require the acquittal of the defendant.*" (emphasis added).

Relying principally upon this authority, appellant complains to us, as he did to the trial judge, that there should have been included in the jury instruction on character testimony a charge:

" . . . that the testimony showing good character and reputation of the Defendant may be sufficient to create such a reasonable doubt as to justify the acquittal of the Defendant *regardless of any other evidence which has been presented.*" (emphasis added).

Appellant's complaint here and below was obviously not that the court hadn't given any instruction on the character testimony, as was our concern in *Braxton,* but that it denied the specific request, *i.e.,* that such testimony could justify acquittal "regardless of any other evidence which has been presented." We think that express language is so strong as to be misleading even in a case where such a character instruction would be more factually appropriate than here, *e.g., Braxton v. State, supra.*

The character issue in *Braxton* became highly relevant because the defendant denied having committed the crime, relied on alibi evidence as his defense, offered testimony of his good character and correlatively contended that his previous good character supported both his credibility and

the probability that he was innocent. Character testimony in such a case is directly tied into the accused's only life support system — the believability of his defense that "it wasn't me" — and might be sufficient to tip the balance of reasonable doubt in his favor.

Here, appellant does not deny having stabbed and killed the victim; he relies upon self-defense as a justification for doing so. Because of the subsidiary questions of the existence of imminent danger and the use of excessive force, the accused's character becomes of diminished significance; nevertheless, it is relevant to the extent that his intent, as found by the jury to have existed in his perpetrating the act, is determinative of whether he committed any crime, and if so, its degree of severity.

As we pointed out in *Braxton*, appellant was clearly entitled to an instruction on the character testimony, but, as we also indicated in *Braxton*, certainly not the overstatement he requested. Our reversal in *Braxton* was predicated on the fact that *no* character charge was given, but should have been despite the fact that the requested one was technically erroneous. We even set forth that which we felt should have been granted.

> "We think that Braxton, having requested an instruction with respect to the evidence of his good character, was entitled to an instruction that the evidence should be taken into consideration by the jury in connection with all the other evidence in the case and, in arriving at their verdict of guilt or innocence, given such weight under all the facts and circumstances of the case, including the credibility, as determined by the jury, of the witness testifying as to Braxton's reputation, as it merits in the judgment of the jury." *Id.* at 442.

Here, the judge, after rendering such general instructions as:

> "You understand that you are the sole judges of the weight of the evidence and the credibility to be

given to the witnesses. You may decide the questions involved on any evidence which your common sense tells you is trustworthy and reliable and on the other hand, you may reject any evidence which you consider improbable or unreliable. You are not bound to believe any witness though his testimony is uncontradicted. You may believe all, part, or none of the testimony of any witness.",

more specifically addressed the substantial amount of evidence, both favorable and unfavorable to appellant, that had come in during the course of the trial.

"You have in evidence before you evidence of the prior conduct of both the Defendant and the deceased. You have evidence as to their conduct and reputation for peace and good order and you have evidence as to their conduct for truth and veracity. There is evidence that each was a calm person. On the other hand, there is evidence that each did some violence occasionally, or was not calm. There is evidence that the Defendant and the deceased were both persons of good truth and veracity; there is evidence on the other hand that each was not quite such a person of truth and veracity. You must weigh this evidence in your considerations and determine that amount of credibility which you determine the evidence presented to you should receive."

We think the instruction fully covered that which was set forth as the standard in *Braxton*. To have added here that such testimony as showed good character and reputation *alone* might create such reasonable doubt as "to justify the acquittal of the Defendant, *regardless of any other evidence which has been presented*", (emphasis added), would have raised the character evidence to a position superior to any other evidence and, in effect, preempted the jury's prerogative in weighing all the evidence together. We reject or recant any notion one reads by ellipsis into *Braxton* or

*Hallengren,* that because a defendant has had an impeccable character and reputation in the past, that alone is sufficient to absolve him from guilt for future crimes of which he may be accused. This is even more obvious in a case such as the one before us, where the accused admits both criminal agency and corpus delicti, but denies the *mens rea* required to convict. In *Gooch v. State,* 34 Md. App. 331, 337, while reversing the trial court for refusing to give a character instruction requested after the general charge, we looked at the self same single sentence as that appellant proposed for an instruction here, and

> "[w]ithout ruling on its validity, we express[ed] our doubts as to whether the excision of one sentence from a previously approved complete charge and its inclusion as a part of a general proposed instruction in a textbook is sufficient authority to require its acceptance as an appropriate advisory jury instruction." (footnotes omitted).

We have now confirmed our doubts and unhesitatingly rule on its validity. As pointed out in *Edgington v. United States,* 164 U. S. 361, 367, evidence of good character:

> " . . . is not proof of innocence, although it may be sufficient to raise a doubt of guilt."

That is as far as we will go. We will not permit character evidence to be isolated and considered by a jury "regardless of any other evidence which has been presented".

*Judgment affirmed.*
*Costs to be paid by appellant.*