674 A.2d 928

**Bruce Lamont DENNIS**

v.

**STATE of Maryland.**

**No. 18, Sept. Term, 1995.**

Court of Appeals of Maryland.

March 13, 1996.

Reconsideration Denied May 3, 1996.

George E. Burns, Jr., Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Petitioner.

Mary Ellen Barbera, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), Baltimore, for Respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

BELL, Judge.

This case presents the issue of whether a passenger in a vehicle whose driver has been stopped by police for a traffic violation may be convicted of disorderly conduct and battery when, rather than heeding the police command to remain in the vehicle, he walks away from the scene, and subsequently resists police attempts at detention. The Circuit Court for Somerset County found the petitioner, Bruce Lamont Dennis, guilty of disorderly conduct and battery and sentenced him to two concurrent terms of imprisonment of 45 days.[1] The Court of Special Appeals affirmed the judgments in an unreported opinion. For the reasons discussed below, we shall reverse.

## I.

Officer Wayne Foskey, of the Princess Anne Police Department, testified in the Circuit Court for Somerset County that on November 27, 1993 he saw a vehicle drive through a red traffic signal. Intending to make a traffic stop, Officer Foskey and his partner pursued the vehicle, while flashing the emergency lights on the police car. The driver of the pursued vehicle ignored the lights and increased his speed. Officer Foskey then shined a flashlight into the vehicle and told the driver to pull over. The driver ignored this command as well and again increased his speed. Eventually, the driver pulled the vehicle into a driveway in a residential neighborhood

---

1. The petitioner was charged not only with battery and disorderly conduct, but also with obstructing and hindering a police officer, and with resisting arrest. At the close of the State's case, the trial court granted the petitioner's motion for judgment of acquittal as to these counts.

where five or six persons were congregated. At that point, the police, then assisted by a third officer, Trooper Bettina Collins, ended the chase.

Once the vehicle stopped, both the driver and the petitioner attempted to exit the vehicle, according to Trooper Collins's testimony. When the petitioner opened the passenger side door, Officer Foskey "yelled for him to shut the car door and stay in the vehicle." Instead, the petitioner stepped out of the vehicle. He ignored Officer Foskey's command to get back into the vehicle and began walking away without uttering a word. Officer Foskey yelled for the petitioner to stop, but he continued to walk away.

Trooper Collins testified that while the petitioner and the driver were attempting to exit the vehicle, "[t]here were several subjects in the yard at that time who were also yelling at us and saying things to Dennis and the other subject." Confronted with the petitioner's continued resistance to his commands, Officer Foskey proceeded to "[take the petitioner] to the ground." The petitioner struck Officer Foskey in the ribs with his elbow and began fighting with him. After spraying the petitioner twice with pepper mace, Officer Foskey finally got him back in the car.

The petitioner was tried for, *inter alia,* disorderly conduct and battery.[2] Finding the petitioner guilty, the trial judge stated:

> Gentlemen, considering the totality of the circumstances, the fact that there was a high speed chase, albeit after perhaps running a red light, I think the officer's actions were not unreasonable at all. I think, all Mr. Dennis had to do was stop, stay where he was, let the officer identify him and ensure that there were no problems with the officer's safety, and we wouldn't have been in court. That didn't happen. I think that with the fact that there were other people in the area at that location, according to Trooper Collins, who began yelling and shouting at the officers, that

---

2. *See supra,* note 1.

by refusing the [sic] comply with the officer's commands to stay within the car, and when he got out of the car, to get down, I think he violated Article 27, Section 123. He was charged with the correct section by refusing the lawful order of a police officer, the refusal of which could have threatened the public peace. Likewise, as to Count # 1, I think there was an unlawful touching. I think the officer was justified in doing what he did when he physically restrained Mr. Dennis, the defendant, from leaving the area. It all could have been avoided if Mr. Dennis had complied with the officer's command, which was not unreasonable.

I'm convinced beyond a reasonable doubt that Mr. Dennis is guilty of Count # 1, Battery, and Count # 2, Disorderly Conduct.

## II.

In examining the petitioner's disorderly conduct conviction, we must first consider the nature of the crime itself. Disorderly conduct is addressed in Maryland Code (1957, 1992 Repl.Vol.), Article 27, § 123, and provides, in pertinent part:

A person may not act in a disorderly manner to the disturbance of the public peace, upon any public street, highway, alley, park or parking lot, in any city, town, or county in this State, or at any place of public worship, or public resort or amusement in any city, town or county in this State, or in any store during business hours, or in any elevator, lobby or corridor of any office building or apartment house having more than three separate dwelling units, or in any public building in any city, town or county of this State.

In *Drews v. State,* 224 Md. 186, 167 A.2d 341 (1961), *vacated on other grounds and remanded,* 378 U.S. 547, 84 S.Ct. 1900, 12 L.Ed.2d 1032 (1964), *judgments reinstated and reaffirmed,* 236 Md. 349, 204 A.2d 64 (1964), *appeal dismissed and cert. denied,* 381 U.S. 421, 85 S.Ct. 1576, 14 L.Ed.2d 693 (1965), this Court stated that

[t]he gist of the crime of disorderly conduct under Sec. 123 of Art. 27, as it was in the cases of common law predecessor

crimes, is the doing or saying, or both, of that which offends, disturbs, incites, or tends to incite, a number of people gathered in the same area. 3 Underhill, *Criminal Evidence*, Sec. 850 (5th Ed.), adopts as one definition of the crime the statement that it is conduct 'of such a nature as to affect the peace and quiet of persons who may witness the same and who may be disturbed or provoked to resentment thereby.' Also, it has been held that failure to obey a policeman's command to move on when not to do so may endanger the public peace, amounts to disorderly conduct. *Id.* at 192, 167 A.2d at 343–44. Thus, while not explicitly stated in the statute, this Court has found there to be a "police command" aspect of disorderly conduct. To be guilty of disorderly conduct on this basis, however, there must be a sufficient nexus between the police command and the probability of disorderly conduct. These commands cannot be " 'purely arbitrary and . . . not calculated in any way to promote the public order.' " *Id.* at 193, 167 A.2d at 344 (quoting *People v. Galpern*, 259 N.Y. 279, 181 N.E. 572, 574 (1932)). *See also Harris v. State*, 237 Md. 299, 303, 206 A.2d 254, 256 (1965) (holding that "[a] failure to obey a reasonable and lawful request by a police officer fairly made to prevent a disturbance to the public peace constitutes disorderly conduct.").

Our prohibition of arbitrary police commands is consistent with the Supreme Court's holding in *Shuttlesworth v. City of Birmingham*, 382 U.S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965). In that case, the Court struck down a city ordinance that made it " 'unlawful for any person to stand or loiter upon any street or sidewalk . . . after having been requested by any police officer to move on.' " *Id.* at 90, 86 S.Ct. at 213, 15 L.Ed.2d at 179 (quoting § 1142 of the Birmingham General City Code). The Court stated that citizens should not be governed " 'by the moment-to-moment opinions of a policeman on his beat[,]' " but rather by clearly defined laws. *Id.* (quoting *Cox v. Louisiana*, 379 U.S. 536, 579, 85 S.Ct. 466, 469, 13 L.Ed.2d 487, 501 (1965)). The Court further stated that law based on "[i]nstinct with its ever-present potential for arbitrarily suppressing First Amendment liberties . . . bears

the hallmark of a police state." *Id.* at 90–91, 86 S.Ct. at 213, 15 L.Ed.2d at 179 (footnote omitted).

A brief review of some of the instances in which Art. 27, § 123 violations premised on the refusal to comply with police commands have been found are instructive, by way of comparison with the case *sub judice,* to show that Maryland case law demands more affirmative conduct by a defendant than occurred in this case before disobeying a police order will be deemed a breach of the peace. For example, in *Hallengren v. State,* 14 Md.App. 43, 286 A.2d 213 (1972), the defendant was among a crowd of people engaged in riotous behavior. While the police attempted to disperse the crowd, the defendant exhorted the crowd "to resist and kill the police." *Id.* 45–46, 286 A.2d at 215. In *Luthardt v. State,* 6 Md.App. 251, 251 A.2d 40 (1969), the defendant encouraged a crowd to burn down the home of an African American family. The police ordered the defendant to desist from his conduct and when he failed to do so he was arrested. *Id.* at 253–55, 251 A.2d at 42–43. In *Bacheller v. State,* 3 Md.App. 626, 240 A.2d 623 (1968), *rev'd on other grounds,* 397 U.S. 564, 90 S.Ct. 1312, 25 L.Ed.2d 570 (1970), the defendants, Vietnam War demonstrators, entered a United States recruiting station and demanded that their anti-war posters be displayed. After being physically ejected from the building, they began blocking the sidewalk, attracting a crowd of onlookers, including some individuals who reacted in a hostile manner to the demonstrators. The demonstrators were ordered by the police to move on and after failing to do so were arrested. *Id.* at 630–31, 240 A.2d at 625–26. *See also Sharpe v. State,* 231 Md. 401, 403, 190 A.2d 628, 630–31, *cert. denied,* 375 U.S. 946, 84 S.Ct. 350, 11 L.Ed.2d 275 (1963).

■ In addressing the disorderly conduct conviction, the State contends that the refusal of the petitioner to stay in the vehicle once it was stopped, coupled with the refusal to comply with Officer Foskey's subsequent commands, constituted disorderly conduct. The State argues, in that regard, that "*Drews* and *Harris* instruct that a conviction for disorderly

conduct will lie whenever a person disobeys a lawful police command to stay—or go—when such a command is designed to avoid a breach of the peace." That argument proves unavailing in the instant case because the testimony lacks the evidentiary foundation on which to base the petitioner's conviction. As noted earlier, Trooper Collins testified that the persons gathered in the yard where the driver's vehicle was stopped were yelling at the police and saying things to the driver and the petitioner. We find it highly significant, however, that the State has proffered no evidence as to the genesis of the yelling, what was being said, even whether the persons were reacting in favor of the petitioner or the police.

In sum, the circumstances described by the State in no way lend themselves to the notion that the petitioner's conduct created any real danger of a breach of the peace. As we see it, the quantum of evidence necessary to sustain a disorderly conduct conviction under Art. 27 § 123 is much greater than the State offered, or suggests, in this case.

## III.

### A.

As part of its effort to justify Officer Foskey's actions in seizing the petitioner, the State cites *Barnhard v. State*, 325 Md. 602, 602 A.2d 701 (1992), for the proposition that " '[w]here a crime may have been committed and a *suspect* or *important witness* is about to disappear, it seems irrational to deprive the officer of the opportunity to "freeze" the situation for a short time, so that he may make inquiry and arrive at a considered judgment about further action to be taken.' " *Id.* at 615, 602 A.2d at 708 (quoting *Watkins v. State*, 288 Md. 597, 605, 420 A.2d 270 (1980) (quoting, in turn, ALI, A Model Code of Pre–Arraignment Procedure § 110.2 (Commentary 1975))) (emphasis added). *Barnhard*, however, may be distinguished from the instant case. In *Barnhard*, police officers testified that, when responding to a stabbing incident, they encountered the defendant who volunteered to show the police where the knife used in the stabbing had been discarded. 325 Md. at 605, 602 A.2d at 703. On that basis, they considered the

defendant to be a "material witness," and, thus, sought to detain him. *Id.* at 605–06, 602 A.2d at 703.

In the instant case, by contrast, there is neither testimony nor evidence in the record indicating that the police considered the petitioner either an "important witness" to the criminal conduct of the driver or a suspect in the case. In fact, as will be discussed *infra,* the basis for the petitioner's detention had nothing to do with either such status. Therefore, the record does not reveal that it was necessary to "freeze" the situation.

### B.

The State concedes the petitioner's right to resist an unlawful arrest in this case; however, it argues that Officer Foskey was effectuating a stop pursuant to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Accepting the State's premise equating "lawfulness" with a stop that does not violate the Fourth Amendment under *Terry,* the petitioner counters that his seizure violated *Terry.* Thus, the issue framed by the parties concerns the scope and application of *Terry.*

To be sure, Officer Foskey's tackling of the petitioner amounted to a "seizure." *See Terry* 392 U.S. at 16, 88 S.Ct. at 1877, 20 L.Ed.2d at 903 ("It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."). The question in this case then becomes whether the seizure was legal. Our analysis in this area is guided by the contours of the Fourth Amendment. Under *Terry,* it is permissible for a police officer to "stop" a person briefly if the officer has a reasonable, articulable suspicion that criminal activity is afoot. The reasonableness of such an intrusion, however, "is to be assessed against an objective standard—whether 'the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate.' " *Anderson v. State,* 282 Md. 701, 705, 387 A.2d 281, 283 (1978) (quoting *Terry,* 392 U.S. at 21–22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906).

A *Terry* stop is an investigatory stop. It is justified on the basis of the general interest in "effective crime prevention and detection." *Terry*, 392 U.S. at 22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906. The rationale underlying a *Terry* stop is that, when the circumstances are appropriate, a police officer may stop a person "for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Id.* at 22, 88 S.Ct. at 1880, 20 L.Ed.2d at 907. Whether appropriate circumstances exist depend upon "the facts and circumstances ... detailed before the trial judge ..." and whether a reasonably prudent person would have concluded that, under those circumstances, a detention for further investigation was justified. *Id.* at 28, 88 S.Ct. at 1883, 20 L.Ed.2d at 910. Because the purpose of the stop is investigatory and must be justified by the facts and circumstances detailed to the court, it follows that the police officer must intend that the stop be investigatory and the stop, in fact, must be for that purpose.

In a traffic situation, the police officer's recitation of the facts leading up to the stop of an automobile ordinarily will suffice to supply probable cause for arrest, in the case of an offense for which arrest is appropriate, or for a stop in the case of other offenses. This circumstance is so because it is the action of the driver of the automobile that is at issue. The presence of a passenger in the car does not change the analysis. The actions of the driver are not automatically, or even necessarily, attributable to the passenger, however. Whether the passenger is subject to arrest or stop will depend upon the facts and circumstances as they relate to the passenger. Thus, as in this case, the officers' articulation of the circumstances surrounding the stop of the automobile revealed that they had probable cause to arrest the driver for fleeing and eluding. In the absence of additional information focusing on the passenger's actions, that articulation did not provide probable cause to believe that his passenger was also engaged in that fleeing and eluding. The question, therefore, is whether there was a basis to further investigate the passenger's

involvement in the criminal act for which the driver was being arrested. The answer to that question depends upon whether there was an articulable basis for believing that the passenger was somehow involved, other than as a passenger, in the commission of that crime.

██ There ordinarily is no reason to believe that a passenger in a vehicle is guilty, as an accessory or aider and abettor, of the traffic offense with which the driver may be charged. This is true even when the offense is fleeing and eluding. *See e.g., Tasco v. State,* 223 Md. 503, 509, 165 A.2d 456, 459 (1960), *cert. denied,* 365 U.S. 885, 81 S.Ct. 1036, 6 L.Ed.2d 195 (1961); *Judy v. State,* 218 Md. 168, 176, 146 A.2d 29, 33 (1958). It is only when the passenger's actions are consistent with those of an accessory or aider and abettor that a police officer has a basis for focusing on and/or charging the passenger. When, for example, the passenger in an automobile in which the driver is charged with fleeing from the police, flees after the automobile is stopped, it is possible for there to arise at least a reasonable suspicion that the passenger was the driver's accessory or aider and abettor.[3] *See Price v. State,* 227 Md. 28, 33, 175 A.2d 11, 13 (1961); *Tasco,* 223 Md. at 509, 165 A.2d at

---

**3.** Maryland Code (1977, 1992 Repl.Vol., 1994 Cum.Supp.), § 21–904 of the Transportation Article provides, in pertinent part:

> (b) *Failing to stop vehicle.*—If a police officer gives a visual or audible signal to stop and the police officer is in uniform, prominently displaying the police officer's badge or other insignia of office, a driver of a vehicle may not attempt to elude the police officer by willfully failing to stop the driver's vehicle.
> (c) *Fleeing on foot.*—If a police officer gives a visual or audible signal to stop and the police officer is in uniform, prominently displaying the police officer's badge or other insignia of office, a driver may not attempt to elude the police officer by fleeing on foot.

By its terms, this section is addressed only to drivers. Section 26–101, however, provides, as relevant:

> (a) *Persons committing violations.*—Any person who commits a violation of the Maryland Vehicle Law, whether as a principal, agent, or accessory, is guilty of the violation.
> (b) *Persons attempting to commit violations.*—Any person who attempts to commit a violation of the Maryland Vehicle Law, whether as a principal, agent, or accessory, is guilty of the violation.

459. In that circumstance, the passenger's flight provides a basis for a *Terry* stop to determine the reason for the flight,[4] *i.e.*, whether he or she, in fact, aided or abetted the driver.

Walking away from an automobile, even one stopped by the police, is not usually considered to be flight unless the person walking away does so in a manner indicative of flight. In some circumstances, however, it may be considered flight, albeit a slow flight, *see Burks v. State,* 96 Md.App. 173, 186, 624 A.2d 1257, 1264 (1993) (flight has no speed requirement). Where a person walks away in defiance of a police officer's request to stop, persistence in walking away may be considered flight.

---

(c) *Persons conspiring to commit violations.*—Any person who conspires to commit a violation of the Maryland Vehicle Law, whether as a principal, agent, or accessory, is guilty of the violation.

(d) *Persons aiding others in commission of violations.*—Any person who aids another in the commission of a violation of the Maryland Vehicle Law, whether as a principal, agent, or accessory, is guilty of the violation.

(e) *Persons abetting others in commission of violations.*—Any person who abets another in the commission of a violation of the Maryland Vehicle Law, whether as a principal, agent, or accessory, is guilty of the violation.

(f) *Persons inducing others to commit violations.*—Any person who intentionally induces another to commit a violation of the Maryland Vehicle Law is guilty of the violation.

(g) *Persons causing others to commit violations.*—Any person who intentionally causes another to commit a violation of the Maryland Vehicle Law is guilty of the violation.

(h) *Persons coercing others to commit violations.*—Any person who intentionally coerces another to commit a violation of the Maryland Vehicle Law is guilty of the violation.

(i) *Persons permitting others to commit violations.*—Any person who intentionally permits another to commit a violation of the Maryland Vehicle Law is guilty of the violation.

(j) *Persons directing others to commit violations.*—Any person who intentionally directs another to commit a violation of the Maryland Vehicle Law is guilty of the violation.

Read together, it is clear that § 21–904 also applies, *inter alia,* to passengers who act as aiders and abetters.

4. The trial judge acquitted the petitioner of resisting arrest, but apparently found that a *Terry* stop was justified when he stated:

I think the officer was justified in doing what he did when he physically restrained Mr. Dennis, the defendant, from leaving the area.

A *Terry* stop was not what Officer Foskey intended. During his direct examination, the prosecutor asked Officer Foskey why he ordered the petitioner, who had begun to exit, to remain in the vehicle, to which Officer Foskey responded,

> [w]ell, we're taught for officers' safety to keep all subjects in the vehicle. Also, we did not know, the way the subject was acting, we did not know if he had contraband, if he had weapons.... [A]nd for our safety, we always ask all subjects to stay in the vehicle.

These statements are the extent of Officer's Foskey's testimony as to why he acted as he did toward the petitioner. The State acknowledges that this testimony is Officer's Foskey's explanation of his behavior.[5] It does not contend, as required by *Terry*, that the testimony articulated a reasonable suspicion that the petitioner was engaged in the criminal conduct for the investigation of which the stop was made. Thus, Officer Foskey detained the petitioner, rather than let him leave the scene, "for officers' safety." Inasmuch as he did not, as the State recognized, articulate the requisite reasonable suspicion *Terry* requires,[6] it is clear that Officer Foskey did not contemplate an investigatory stop with the petitioner as its object.

## C.

■ In the instant case, there may well have been sufficient evidence in the record from which Officer Foskey could have

---

**5.** In its brief, the State observed:

> Both the driver and Dennis tried to get out of the car, and both were ordered to stay seated in the car.... Officer Foskey explained that this is done (and was done in this case) for safety's sake. Foskey said: "[W]e're taught for officers' safety to keep all subjects in the vehicle. Also, we did not know, the way the subject was acting, we did not know if he had contraband, if he had weapons ..." This is not an unreasonable, or atypical, precaution. *See New York v. Class*, 475 U.S. 106, 115 [106 S.Ct. 960, 966–67, 89 L.Ed.2d 81] (1986) (commenting that "[k]eeping the driver of a vehicle in the car during a routine traffic stop is probably the typical police practice.").

**6.** As discussed *supra*, Trooper Bettina Collins also testified in the trial court. She, too, failed to articulate a reasonable suspicion for a *Terry* stop based on the petitioner's conduct.

possessed a reasonable, articulable suspicion that the petitioner aided and abetted the criminality of the driver. Had he, in fact, intended to make a *Terry* stop, a different result might be appropriate. It is not enough that the record contain facts on the basis of which a police officer could entertain a reasonable, articulable suspicion sufficient to justify an investigatory stop, however. *Terry* requires more. The police officer must intend the stop to be an investigative stop, not just a detention for safety purposes.

*Terry* requires that "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906 (footnote omitted). Indeed, such an articulation is a condition precedent to a judicial determination that a reasonable suspicion justified the officer's conduct. *Cf. Graham v. State*, 325 Md. 398, 404, 601 A.2d 131, 134 (1992) (stating that "a detention short of arrest is lawful if the police have a reasonable, articulable suspicion for such action."). There is some indication in case law that the officer must *specifically articulate* reasonable suspicion for a *Terry* stop, and in the absence of a specific articulation by the officer, the court is not justified in reaching a conclusion that the surrounding circumstances justified a reasonable suspicion for a *Terry* stop. *Jones v. State*, 319 Md. 279, 287, 572 A.2d 169, 173 (1990) ("[P]olice officers are entitled to make a forcible stop if the officer has reasonable grounds for doing so. He must be able to point to specific and articulable facts that warrant such an intrusion to be within the legal parameters of the Fourth Amendment."); *State v. Wilson*, 106 Md.App. 24, 29, 664 A.2d 1, 3 (1995) ("It is . . . the officer who must do the articulating, not the Attorney General by way of appellate afterthought."); *Gibbs v. State*, 18 Md.App. 230, 238, 306 A.2d 587, 592 (1973) ("It is . . . clear that the policeman must be able to articulate specific facts justifying both the 'stop' and, quite independently, the 'frisk.'"). *See also State v. Jamison*, 482 N.W.2d 409, 413 (Iowa 1992); *State v. Cripps*, 533 N.W.2d 388, 391–92 (Minn. 1995). Of course, the stated reason for the stop must be

objectively reasonable. *See Doctor v. State,* 596 So.2d 442, 447 (Fla.1992).

Other courts have rejected the stated reason for the stop of a suspect and, yet, upheld the stop as objectively reasonable. *United States v. Cardona–Rivera,* 904 F.2d 1149, 1153–54 (7th Cir.1990); *United States v. Hawkins,* 811 F.2d 210, 214–15 (3rd Cir.1987), *State v. Mitchell,* 80 Wash.App. 143, 906 P.2d 1013, 1016 (1995). *See State v. Bolosan,* 78 Hawai'i 86, 890 P.2d 673, 683 (1995). In each case, the officers testified to the facts that the court determined to be controlling and, in each case, those facts related to the subject being stopped. In this case, the observations and testimony concerning the events leading up to the stop all focused on the actions of the driver of the automobile; this testimony in no way detailed what the petitioner did to warrant his detention. We need not, however, decide in the instant case, whether the officer must articulate specifically the basis for the stop in order to permit the court to conclude that a *Terry* stop was justified.

In the case *sub judice,* the record reflects that once the driver stopped the fleeing vehicle, the petitioner got out and began walking away from the scene, disregarding Officer Foskey's command to stop. Officer Foskey could have concluded from that conduct that the petitioner was fleeing the scene. While fleeing from a police officer or disregarding a police officer's command to stop, in and of itself, does not give rise to probable cause or even a reasonable suspicion sufficient to justify the use of force to detain the person fleeing, *see Watkins v. State,* 288 Md. 597, 604, 420 A.2d 270, 274 (1980), where that person is a passenger in the automobile as the driver attempts to flee from and elude the police, a police officer reasonably and objectively could entertain a suspicion that he was an active and willing participant with the driver in that attempt. In the instant case, however, that suspicion was not what prompted the officer to detain the petitioner. It was solely because the officer felt he would be safer if the petitioner were detained.

In the trial court, the prosecutor argued:

Your Honor, I think Officer Foskey had an absolute right to stop this man and ask him to at least identify himself, and then make a decision at that point in time.

You've got two people who run through a red light, which is not a major crime. It happens every day. I'm sure very few people get stopped for it. But following that you've got a police car that gets behind the vehicle, attempts to stop it, his emergency lights go out but he stayed with the car. A second police car with emergency lights comes behind it. . . . It's got two police vehicles trying to stop it. It's obvious to everybody, if you believe the officers' testimony, that they're trying to stop the car to the point they even shine a flashlight in the car to get it stopped. The car stops in somebody's yard and both people bail out.

I think there's all kinds of reasons for suspicion in the officer's mind. He's got to do something. He's got to at least identify the two people in the vehicle. He's got to run that car to see whether or not it's stolen, and to see what the reason is for the flight. He's got all kinds of suspicions in his mind. . . .

In so doing, the prosecutor, perhaps to compensate for Officer Foskey's failure to do so, articulated a basis on which Officer Foskey *could have* entertained a suspicion. The prosecution's articulation of a reasonable suspicion, however, is unavailing because no *Terry* investigative stop was intended. The prosecutor, rather than the officer, articulating a reasonable suspicion, justified by the record, on which the officer may have acted, may not be sufficient for a *Terry* stop. It clearly is not sufficient in the instant case, where a stop for the officers' safety, rather than a *Terry* investigative stop, was intended. There is no articulated reason why the officers would be safer by detaining the petitioner, rather than simply allowing him to walk away from the scene.

■ So that our position is clear, we are not holding today that a passenger in an automobile whose driver has fled from and eluded the police has an unfettered right to ignore a police officer's commands to stop. We simply hold that to justify

detaining the passenger, the officer must have a reasonable suspicion that the passenger engaged in criminal behavior and must have intended to conduct further investigation based on that suspicion.

## IV.

▓▓▓ Based on the foregoing analysis, we must also dismiss the battery conviction. Because Officer Foskey did not make a *Terry* stop, he is not entitled to the presumption that the stop was legal. It follows, therefore, that Officer Foskey's forcible detention of the petitioner amounted to an arrest and was illegal.[7] This Court has upheld the right of a person to resist an unlawful arrest. *See Barnhard v. State,* 325 Md. 602, 614, 602 A.2d 701, 707 (1992); *Rodgers v. State,* 280 Md. 406, 410, 373 A.2d 944, 946, *cert. denied,* 434 U.S. 928, 98 S.Ct. 412, 54 L.Ed.2d 287 (1977); *Williams v. State,* 204 Md. 55, 64, 102 A.2d 714, 718 (1954); *Sugarman v. State,* 173 Md. 52, 57, 195 A. 324, 326 (1937). Resistance includes the right to use "any reasonable means, including force, to effect [an] escape." *Barnhard,* 325 Md. at 614, 602 A.2d at 707. Thus, we hold that the petitioner is not guilty of the battery of Officer Foskey.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR SOMERSET COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY SOMERSET COUNTY.*

---

7. The State quite correctly points out that the use of force is permissible, if necessary, to effectuate a *Terry* stop. *See, e.g., Lee v. State,* 311 Md. 642, 667, 537 A.2d 235, 247 (1988) (holding that a "brief, though forceful, detention of petitioners was constitutionally justified by reasonable suspicion under the circumstances."); *Terry v. Ohio,* 392 U.S. 1, 7, 88 S.Ct. 1868, 1872, 20 L.Ed.2d 889, 897 (1968) (stating that "Officer McFadden grabbed petitioner Terry, spun him around so that they were facing the other two . . . .").