Douglas B. WHITE

v.

**State of MARYLAND TRANSPORTATION AUTHORITY, et al.**

**Civil No. JFM–00–758.**

United States District Court, D. Maryland.

June 1, 2001.

---

Sean Robert Day, College Park, MD, for Douglas B. White.

Karen J. Kruger, Attorney General's Office-MD Trans. Authority, Baltimore, MD, J. Joseph Curran, Jr., Office of the Attorney General, Baltimore, MD, John Charles Bell, Maryland Transportation Authority, Baltimore, MD, for State of Maryland Transportation Authority.

J. Joseph Curran, Jr., Office of the Attorney General, Baltimore, MD, Gisele Marie Mathews, Maryland Transportation Authority, Baltimore, MD, for Gregory L. Justice, Jr.

**OPINION**

MOTZ, District Judge.

On November 22, 1998, at Baltimore Washington International Airport, Gregory Justice, a police officer working for the Maryland Transportation Authority [MTA], arrested Douglas White, a would-be passenger on Southwest Airlines. White was charged with failure to obey a lawful order of a police officer, intoxication in a public place, and possession of cocaine. The state prosecutor ultimately filed a nolle prosequi on all three charges. White has filed thirteen charges against the MTA

and Justice, under the U.S. Constitution, the Maryland Declaration of Rights, and Maryland common law.[1] He now moves for summary judgment on three counts of false arrest (counts 1, 7, and 10) and two counts of malicious prosecution (counts 5 and 9). The MTA moves for summary judgment on all counts in which White asserts negligent training and supervision by the state (counts 2, 4, 6, 11, and 13). Justice moves for summary judgment on all counts against him (counts 1, 3, 5, 7–10, and 12) on two grounds: failure to state a claim upon which relief can be granted and qualified immunity.

*I. Background*

Summary judgment is proper if the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine dispute about a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must draw all reasonable factual inferences in favor of the non-movant. 477 U.S. at 255, 106 S.Ct. 2505. Accordingly, in considering White's motion for summary judgment, the court must draw all reasonable factual inferences in favor of the state and Officer Justice, and in considering the defendants' motions, the court must draw

---

**1.** The amended complaint includes the following counts: (1) false arrest; (3) false imprisonment and intentional infliction of emotional distress; (5) malicious prosecution; (7) unlawful seizure under the Fourth Amendment and 42 U.S.C. § 1983; (8) excessive force and imprisonment under the Fourth Amendment and 42 U.S.C. § 1983; (9) malicious prosecution under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983; (10) intentional or malicious unlawful seizure under Articles 24

and 26 of the Maryland Declaration of Rights; and (12) false imprisonment under Articles 24 and 26 of the Maryland Declaration of Rights. In addition, counts 2, 4, 6, 11, and 13 assert that the Maryland Transportation Authority negligently failed to train and supervise Officer Justice, and therefore proximately caused the harms described in counts 1, 3, 5, 10, and 12, respectively. (The amended complaint includes two counts numbered 12. Am. Compl. at 13–14. This opinion refers to the second count 12 as count 13.)

all reasonable factual inferences in favor of White.

Late on November 22, 1998, Douglas White attempted to check in at Gate C–13 for a flight on Southwest Airlines. White testified on deposition that he had shared a bottle of wine with friends at dinner several hours earlier, that he had spilled coffee on himself en route to the airport, and that he otherwise appeared disheveled because he had been roller-blading earlier in the day. Two employees of Southwest Airlines, Sheila Michael and her supervisor Melissa Chalupa, concluded that he was drunk and was behaving erratically, and ultimately, after consultation with the captain of the plane, who did not observe White, informed White that he would not be permitted to board the plane. White protested this decision and demanded a refund. Officer Justice arrived with Officer Westbrook in response to a call by one of the airline employees, and eventually ordered White to sit. In response to the order White remained standing and said nothing. Justice arrested him.

Testimony on the presence and behavior of onlookers varies. In particular, at the time of the order to sit, Sheila Michael says no one but White, the two airline employees, and the two police officers was in the area. Mot. Ex. A at 19–20, 23. Justice says 100 to 300 people were in the area. Mot. Ex. D at 13–14. White does not clearly testify on this record. Opp'n Ex. A at 29; Opp'n Ex. B at ¶ 11. The other police officer present says that small crowds had gathered to watch, and the other airline employee, Chalupa, says that from 1 to 100 people were in the area at various points and does not describe a crowd gathering. Mot. Ex. B at 24–27, 29–31; Mot. Ex. C at 19–21. Similarly, the behavior of any crowd that was present is in dispute. Justice says onlookers were commenting and calling out, Chalupa says passengers were disturbed while using the check-in counter and were audibly discussing White, White says he did not disturb any other passengers, and other witnesses who remember a crowd being present do not recall any comment by or interaction with the crowd.

After arresting White, Justice found that White was carrying two clear capsules containing a white powder. A test using a "Falcon Blue System" kit revealed that the capsules were a possible match for cocaine. White says he explained that the capsules contained a prescription medicine, admitted that the medicine would register as a possible match for cocaine, and explained that he had divided his pills in half and placed the halves in new capsules, against the advice of his doctor. White says he asked Justice to test the prescription medicine that had not been repackaged, as it too would test positive, confirming his claims that both were prescribed; he says Justice refused. Later, more precise testing revealed that the substance in the clear capsules was indeed a prescription medicine, not cocaine.

White spent five hours in a holding cell before being taken before a District Court Commissioner in Anne Arundel County. He says that his handcuffs were painfully tight. White says that he "yelled very loudly" and kicked the door of his cell on several occasions, shouting for someone to take the handcuffs off. He says that Officer Justice told him that the handcuffs would be removed if he sat quietly for a half hour, and that later when he pointed out that a half hour had passed, Justice told him that he had just spoken, violating the requirement. Eventually, he says, Officer Justice fastened a leather strap around his torso, binding his arms to his side and forcing him to lie on his front. Pl.'s Opp. Ex. B at ¶ 14. (According to Officer Justice, his supervisor, a Sergeant

Lodgen, put the strap on White. Justice Reply Ex. B at 44.) White asked to be allowed to take his blood pressure medication, but was not given permission, and soon had a panic attack. He says the police then called paramedics and offered him the opportunity to go to the hospital, which he declined. Pl.'s Opp. Ex. A at 64.

Officer Justice and Officer Westbrook both attended the Maryland Transportation Authority Police Academy, certified by the Maryland Police Training Commission. State's Opp. Ex. C at 62, Ex. D at 53–54. Both studied constitutional and criminal law there as central parts of their training. State's Opp. Ex. C at 62, Ex. D at 53–54.

## II. Officer Justice

 White's claims against Justice under the federal Constitution (counts 7–9) are all brought under 42 U.S.C. § 1983.[2] On the federal claims for false arrest, false imprisonment, and malicious prosecution, the dispositive question is probable cause. Probable cause requires "facts and circumstances sufficient to warrant a prudent [person] in believing that the [suspect] committed or was committing an offense." *DiPino v. Davis,* 354 Md. 18, 32, 729 A.2d 354 (1999) (citation omitted). Under Maryland law, a person "may not willfully act in a disorderly manner to the disturbance of the public peace" and "may not willfully fail to obey a reasonable and lawful order of a law enforcement officer made to prevent a disturbance to the public peace." Md. Ann.Code of 1957, art. 27 § 121(b)(2). The Maryland Court of Appeals has repeatedly characterized this offense as "the doing or saying, or both, of that which

offends, disturbs, incites, or tends to incite, a number of people gathered in the same area," or "conduct 'of such a nature as to affect the peace and quiet of persons who may witness the same and who may be disturbed or provoked to resentment thereby.'" *Dennis v. State,* 342 Md. 196, 200–01, 674 A.2d 928, 930 (1996) (citations omitted) (reviewing state law on disorderly conduct), *vacated on other grounds, Maryland v. Dennis,* 519 U.S. 802, 117 S.Ct. 40, 136 L.Ed.2d 4 (1996), *aff'd on remand,* 345 Md. 649, 693 A.2d 1150 (1997). In addition, failure to obey a lawful police order designed to protect the public peace may amount to disorderly conduct, Md. Ann. Code of 1957, art. 27 § 121(b)(3), although "[t]o be guilty of disorderly conduct on this basis, ... there must be a sufficient nexus between the police command and the probability of disorderly conduct." 342 Md. at 201, 674 A.2d at 930 (citations omitted). Both White's conduct and his speech are at issue.

 The Maryland statute criminalizing disorderly conduct makes it plain that the "public peace" is a central element of the crime under both § 121(b)(2) and under § 121(b)(3). The public must be present for its peace to be threatened. *See Okwa v. Harper,* 360 Md. 161, 187, 757 A.2d 118, 132 (2000) (noting that only the plaintiff, police officers, and airline employees were in the "immediate vicinity" of a dispute in reversing summary judgment on the basis of probable cause for an airport disorderly-conduct arrest). The witnesses' accounts of whether a crowd was present when Officer Justice directed White to sit down, and how the crowd was reacting if one was present, differ substantially. Sheila Michael testified that when White ap-

---

**2.** White names Justice in his official and individual capacities. *See* Am. Compl. at ¶ 5. In his official capacity, Justice is immune from a damages suit. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 64–66, 109 S.Ct. 2304,

105 L.Ed.2d 45 (1989); *Harter v. Vernon,* 101 F.3d 334, 338 n. 1 (4th Cir.1996). The remaining analysis in this opinion treats all claims as against Justice in an individual capacity.

proached the podium for the second time and was ordered to sit down, no one but the officers, White, and the airline employees were in the area. All passengers for the flight to which White had been denied access had boarded, no nearby gates were in use because the flight White had tried to take was the last out of that area, and Michael did not even recall seeing anyone who had said farewell to a passenger. White himself never testified directly to the number of people in the area. Although he testified that he had never disturbed any other passenger, thus conceding that others had been present for part of the encounter, these comments were not specific enough to constitute an acknowledgment that any onlookers were present when he was ordered to sit down. Chalupa could say only that between 1 and 100 people were in the area, without distinguishing between the beginning of the interaction with White and the time of his arrest. Meanwhile, the police officers each described and located on diagrams small crowds that had gathered to watch, and Justice and Chalupa each testified to hearing comments about White's interaction with the airline employees and police officers.

Whether a crowd was present when White disobeyed Justice's order to sit down is genuinely in dispute, as is the behavior of the crowd if one was present. If there was no one around when Justice ordered White to sit down and arrested him for refusing, and all other reasonable inferences are drawn in favor of White, Justice would have had little reason to believe he had a lawful reason to give the order to sit. *Okwa*, 360 Md. at 185, 757 A.2d at 131 ("The police officer's request . . . must be intended to prevent someone from inciting or offending others."). Similarly, drawing all reasonable inferences in favor of White, in the absence of onlookers before the order, Justice would have had little reason to believe that he had probable cause for an arrest based on disorderly conduct. On the other hand, if there was a crowd, probable cause for the arrest depends in material part on the crowd's reactions to White's behavior, an issue on which the witnesses differ substantially. Drawing all reasonable inferences in favor of the defense, a vocal crowd had gathered, passengers using the check-in counter were being disturbed, and an airline employee was frightened by White's behavior into moving away from him. Justice could reasonably have believed that he had probable cause under such circumstances.[3]

Because of the genuine disputes as to the presence of a crowd and crowd behavior, Justice is not entitled to summary judgment on the federal claims for false arrest, false imprisonment, and malicious prosecution (counts 7–9). Nor, for the same reason, is White.[4] *See Atwater v. City of Lago Vista*, 532 U.S. 318, 121 S.Ct. 1536, 1556, 149 L.Ed.2d 549 (2001) (holding that probable cause is the only limit the Fourth Amendment to the U.S. Constitu-

---

**3.** Genuine disputes of material fact bar a finding of probable cause on the charge of public drunkenness, and the prescription medicine that initially tested positive for cocaine was only discovered after the arrest, so there are no other grounds on which to find probable cause or a reasonable belief in probable cause to ground summary judgment for Justice.

**4.** For the same reason, White is not entitled to summary judgment on the state-law analogues of these federal claims (counts 1, 5,

and 10); his motion thus fails on every count. Md. Ann.Code art. 27, § 594B(b) (2000) (counts 1 & 10); *Krashes v. White*, 275 Md. 549, 554, 341 A.2d 798 (1975) (count 5). Nor is Justice entitled to summary judgment on counts 1, 5, and 10 on the grounds that he had probable cause, although I rule at a later point in this opinion that he is entitled to summary judgment on counts 1 and 5 because of state statutory immunity.

tion imposes on a police officer's decision to arrest) (count 7); *Baker v. McCollan*, 443 U.S. 137, 143–45, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (noting that where probable cause existed for arrest, eight days' imprisonment of an innocent man gives him no claim under the U.S. Constitution) (count 9); *Rogers v. Pendleton*, 249 F.3d 279, 293 (4th Cir.) (explaining the close relationship of malicious-prosecution and false-arrest claims under the U.S. Constitution).

■ On the last federal claim, of excessive force (count 8), White has failed to make out a federal constitutional claim for use of excessive force.[5] According to White, during his four to five hours in custody, his handcuffs were too tight, his arms were fastened to his torso for part of the time with a leather strap, requiring him to lie face down, and Justice baited him when he asked to have the handcuffs removed. Under Fourth Circuit law, a claim that handcuffs were too tight, without more, is not actionable under the Fourth or Fourteenth Amendments to the U.S. Constitution. *Carter v. Morris*, 164 F.3d 215, 219 n. 3 (4th Cir.1999). White acknowledges that he "yelled very loudly" and kicked the door of his cell repeatedly before the strap was applied. White does not claim that he suffered physical injury from either the strap or the handcuffs, and he himself chose to refuse any medical treatment for the panic attack. The use of handcuffs and use of a leather strap that White describes cannot give rise to a federal constitutional claim of excessive force where he has made no showing of even a de minimis injury. *Riley v. Dorton*, 115 F.3d 1159, 1166–68 (4th Cir.1997). Finally,

his claims that he was being baited by Officer Justice are not actionable where the handcuffs themselves are not. Justice is entitled to summary judgment on the claim of excessive force (count 8).

■ On the common-law claims against Justice (counts 1, 3, and 5), Justice is entitled to statutory immunity unless he acted outside the scope of his employment, with malice, or with gross negligence. Md.Code Ann., Cts. & Jud. Proc. § 5–522(b); Md.Code Ann., State Gov't. § 12–105. White has argued malice, in the alternative, but has not argued gross negligence or action outside the scope of Justice's employment. Malice in this context is an "evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill will, or fraud ... not merely gross negligence or wanton or reckless conduct." *Shoemaker v. Smith*, 353 Md. 143, 163, 725 A.2d 549, 559 (1999).

■ Under Maryland law, a plaintiff may not defeat summary judgment on the issue of qualified immunity simply by alleging malice. Instead "the plaintiff must point to specific evidence that raises an inference that the defendant's actions were improperly motivated .... sufficient to support a reasonable inference of ill will or improper motive." *Thacker v. Hyattsville*, 135 Md.App. 268, 301, 762 A.2d 172, 189–90 (2000) (citation omitted). As White all but acknowledges, Pl.'s Reply at 7, he has made no such showing with respect to Justice's decision to arrest him; even if, as he claims, his behavior did not give Justice probable cause to arrest him, nothing in his own account of the event suggests that Justice was motivated by ill will or hatred toward him, or was knowingly and deliber-

---

5. I address White's federal constitutional claim based on excessive force on the merits. *See Cox v. County of Prince William*, 249 F.3d 295 at *n. (4th Cir.) (noting a relevant grant of certiorari by the Supreme Court and ad-

dressing the issue of whether an excessive-force constitutional violation had occurred without addressing the question of qualified immunity).

ately doing wrong.[6] Nor does Justice's post-arrest treatment of White and his completion of the paperwork incident on arrest support such a finding. White says that Justice restrained him, but makes no showing of either physical violence toward him or any other grounds to infer animosity. *See Okwa,* 360 Md. at 182, 757 A.2d at 129 (focusing on account of physical violence against arrestee as grounds for a finding of malice); *Sawyer v. Humphries,* 322 Md. 247, 261–62, 587 A.2d 467, 474 (1991) (same); *Thacker v. City of Hyattsville,* 135 Md.App. at 306, 762 A.2d at 192 (focusing on a personal history of animosity between officer and arrestee as well as a potential financial motive on the officer's part). Nothing in the record suggests that Justice was motivated by hatred or ill will toward White. Accordingly, White's tort claims of false arrest, false imprisonment, and malicious prosecution (counts 1, 3, & 5) against Justice fail on the grounds of qualified immunity under Maryland law.

Against the state constitutional claims for false arrest and false imprisonment (counts 10 and 12), Justice argues that he had probable cause. Justice Opp'n at 19–20. Because a genuine dispute of material fact precludes such a finding, he is not entitled to summary judgment on these claims. Justice also moves for summary judgment on the state constitutional claims because he claims immunity under Maryland statute. Mot. at 1. The application of the Maryland Tort Claims Act, Md.Code Ann., Cts. & Jud. Proc. § 5–522(b), to state constitutional torts is a vexed question of state law. *See, e.g., Ritchie v. Donnelly,* 324 Md. 344, 374 & n. 14, 597 A.2d 432, 446 & n. 14 (1991) (noting that the question is open); *Okwa,* 360 Md. at 201, 757 A.2d at 140 (citing *Ritchie* in explaining, without reference to the statute, that a public official is not entitled to common-law immunity for state constitutional torts). The question has not been briefed at all in this case; the only mention of it in the pleadings is the sentence by which Justice preserves his claim. Because two of the federal constitutional claims proceeding to trial are cognates of the state constitutional claims, and a ruling that Justice was immune under state law would not protect him from the expenses and other costs of facing trial, I will not decide the question at present.

 Finally, to prove intentional infliction of emotional distress, White would have to show that Officer Justice's conduct was intentional or reckless, that it was extreme and outrageous, that White suffered severe emotional distress, and that the emotional distress and outrageous conduct were causally connected. *Batson v. Shiflett,* 325 Md. 684, 733, 602 A.2d 1191 (1992) (citation omitted). Maryland limits the tort to conduct "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Miller v. Ratner,* 114 Md.App. 18, 57–58, 688 A.2d 976 (1997) (citation omitted); *Bagwell v. Peninsula Regional Medical Ctr.,* 106 Md.App. 470, 514–16, 665 A.2d 297 (1995). I have already found that White has failed to show any evidence of ill will toward him up to his arrest by Justice; he has similarly failed to show any evidence that Justice's conduct to him up to the time of arrest was extreme or outra-

---

**6.** White cannot show malice by pointing to a lack of probable cause, so the genuine dispute relating to probable cause for the arrest does not preclude summary judgment on the issue of malice. *See Shoemaker v. Smith,* 353 Md. 143, 162–64, 725 A.2d 549, 559–60 (1999) (distinguishing "actual malice," meaning hatred or ill will, from "implied malice," including, "in a malicious prosecution case, actions taken without probable cause," and requiring the former to defeat state statutory qualified immunity).

geous. *See Williams v. Prince George's County,* 112 Md.App. 526, 555–56, 685 A.2d 884, 899 (1996) (finding that no claim for intentional infliction of emotional distress was stated where officers mistakenly arrested plaintiff without the use of force). Likewise, the post-arrest custodial conditions that White describes do not rise to this level, particularly given the conduct during detention that White admits. Justice's motion for summary judgment on count 3 will be granted.

### III. Maryland Transportation Authority

The MTA moves for summary judgment only on the claims of negligent supervision and training against it (counts 2, 4, 6, 11, and 13).[7] White has neither argued nor made any showing that the breach of a state duty to him caused his harm. Nor has he presented any support for the claim that the MTA's training or supervision was in fact inadequate. The only evidence related to the officers' training at all is testimony by both officers that they attended the Maryland Transportation Authority Police Academy, where they were trained in constitutional and criminal law. Had Justice violated White's constitutional rights, some additional showing would still be necessary to raise an issue of fact surrounding his training and supervision. *Cf. City of Canton v. Harris,* 489 U.S. 378, 391, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Spell v. McDaniel,* 824 F.2d 1380, 1389 (4th Cir.1987).

For these reasons, the Court will deny plaintiff's motion for partial summary judgment, grant defendant Justice's motion for summary judgment as to count 1, count 3, count 5, and count 8 with respect to excessive force, deny defendant Jus-

tice's motion for summary judgment as to count 7, count 8 with respect to false imprisonment, count 9, count 10, and count 12, and grant the MTA's motion for partial summary judgment as to counts 2, 4, 6, 11, and 13.

---

7. Although the MTA argued state immunity from suit in opposing White's motion for summary judgment against it on other counts, it did not move for summary judgment in its favor on those counts.