76 A.3d 1198

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

**v.**

**Daniel Quinn MAHONE.**

**Misc. Docket AG No. 35, Sept. Term, 2011.**

Court of Appeals of Maryland.

Sept. 30, 2013.

Lydia E. Lawless, Asst. Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for petitioner.

Barry J.C. Kissin, Esq. (Frederick, MD), for respondent.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, McDONALD, and BELL *, JJ.

BELL, C.J. (Retired).

The Attorney Grievance Commission of Maryland ("the petitioner"), acting through Bar Counsel and pursuant to Maryland Rule 16–751(a),[1] filed a Petition for Disciplinary or Remedial Action against Daniel Quinn Mahone, ("the respondent"). The petitioner alleged, in that Petition, that the respondent violated Rules 8.4(b)[2] and (d),[3] Misconduct, of the

---

* Bell, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Maryland Rule 16–751(a) provides:
   "(a) *Commencement of disciplinary or remedial action.* (1) Upon Approval or Direction of Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

2. MLRPC 8.4(b) provides:
   "It is professional misconduct for a lawyer to:
   \* \* \*
   "(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects[.]"

Maryland Lawyers' Rules of Professional Conduct ("MLRPC"), as adopted by Maryland Rule 16–812.

Pursuant to Maryland Rule 16–752(a), we referred the Petition to the Honorable Joseph M. Quirk of the Circuit Court for Montgomery County for the evidentiary hearing required by Maryland Rule 16–757.[4] Following that evidentiary hearing, Judge Quirk issued Findings of Fact and Conclusions of Law pursuant to Maryland Rule 16–757(c) [5]:

### *"FINDINGS OF FACT AND CONCLUSIONS OF LAW* [6]

\* \* \*

---

3.  MLRPC 8.4(d) provides:
    "It is professional misconduct for a lawyer to:
    \* \* \*
    "(d) engage in conduct that is prejudicial to the administration of justice[.]"

4.  Maryland Rule 16–757 provides, in relevant part:
    "(a) **Generally.** The hearing of a disciplinary or remedial action is governed by the rules of evidence and procedure applicable to a court trial in a civil action tried in a circuit court. Unless extended by the Court of Appeals, the hearing shall be completed within 120 days after service on the respondent of the order designating a judge. Before the conclusion of the hearing, the judge may permit any complainant to testify, subject to cross-examination, regarding the effect of the alleged misconduct. A respondent attorney may offer, or the judge may inquire regarding, evidence otherwise admissible of any remedial action undertaken relevant to the allegations. Bar Counsel may respond to any evidence or remedial action."

5.  Maryland Rule 16–757(c) states:
    "(c) **Findings and conclusions.** The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party."

6.  As a part of his Findings of Fact and Conclusions of Law, Judge Quirk included, as part I, an Evidentiary Summation, in which he rehearsed, in meticulous detail, the testimony, separated by reference to whether it related to what occurred in the courtroom or what occurred outside the courtroom, of each witness who testified. For each witness, Judge Quirk assessed credibility, both as to the testimony as a whole and as to

## II. *FINDINGS OF FACT*

"1. Daniel Quinn Mahone (hereinafter "Mahone") was admitted to the practice of law in the State of Maryland on June 25, 1986. He currently maintains an office located at 9A West Patrick Street, Frederick, Maryland 21701. Mahone has been a solo practitioner since 2010. He is now fifty (50) years old. He had never been arrested prior to February 1, 2010.

"2. On February 1, 2010, the Honorable Michael R. Pearson was presiding in the case of *Mayo v. Taylor* (Case No. CADV 10–01823) in the Circuit Court for Prince George's County. The matter involved a Final Protective Order proceeding with allegations of serious injuries to a two (2) year-old child brought by his paternal grandmother against her own son, the child's biological father.

"3. On February 1, 2010, Bailiff Harris, Bailiff Washington, Deputy Sheriff Milam, and Deputy Harville were assigned to Judge Pearson's courtroom to provide security.

"4. Respondent entered the courtroom during Final Argument. He did not "barge" into the courtroom. Respondent represented the child's mother, who had moved to Maine following the removal of the infant from her care by the Washington County Department of Social Services. Respondent's client was neither present nor a party to the proceedings. Neither she nor Respondent had received prior notice of the proceedings. Respondent was made aware of the proceeding by telephone message received the morning of February 1, 2010 from the biological father. Respondent

---

how it compared with the testimony of other witnesses testifying as to the same subject. For example, as to the arresting officer, Judge Quirk found that his "testimony regarding behavior outside the courtroom to be somewhat embellished as to Mahone's alleged behavior" and that "[i]nconsistencies in criminal trial testimony and hearing testimony herein depict poor behavior far beyond that behavior alleged in the contemporaneously-written Statement Of Probable Cause." Nevertheless, after summarizing the respondent's post-courtroom testimony, he found, "Mahone's testimony as to post-courtroom events to be less credible than that of Milam."

traveled to the Prince George's County Circuit Court to represent his client's interests.

"5. Respondent was dressed in a suit and was not inappropriate in his physical demeanor upon arrival. He was not "disheveled and winded."

"6. Judge Pearson interrupted Final Argument to allow Respondent to inform the Court as to the reason for his presence and to explain his client's position. Judge Pearson informed Respondent as to the nature of the proceedings being a Final Protective Order hearing and informed Respondent that if he chose to file motions regarding the Child's custody, that such would be considered at a later date. Judge Pearson then directed Respondent to be seated.

"7. In the colloquy with Judge Pearson, Respondent was neither rude nor disrespectful. At no time were Respondent's words toward Judge Pearson other than professional.

"8. Following the colloquy between Respondent and Judge Pearson, Respondent did not remain quiet and seated. Judge Pearson's comment regarding lowering of voice was directed to Respondent. Respondent made verbal attempts to communicate with Taylor during Final Argument. In response, Taylor turned around from counsel['s] table to receive communications from Respondent. Respondent was asked on several occasions by Bailiff Harris, Deputy Harville and Deputy Milam to remain quiet, to lower his voice, and to remain seated. Respondent failed to fully comply with these instructions.

"9. Judge Pearson was hearing a sensitive, serious case with *pro se* parties. His focus was to make and explain his Ruling and to keep matters calm between the parties before him. Respondent's behavior was "animated" before his colloquy with the Court, which behavior became "agitated" thereafter. Mahone did not further attempt to address the Court.

"10. Respondent, from his seat in the Gallery directly behind the biological father, passed one written note to him in the Well. Respondent ceased doing so when instructed by the bailiff.

"11.  The only record of courtroom proceedings is that of the court reporter, as no audio or visual recording was made.

"12.  Judge Pearson did not specifically direct or address Respondent's courtroom removal nor any other aspect of Respondent's courtroom behavior.  Judge Pearson did not admonish, correct, or bring to Respondent's attention any displeasure he may have had with Mahone's behavior until his February 26, 2010 letter to Bar Counsel.

"13.  Respondent did not commit any criminal behavior in the courtroom.

"14.  Respondent was removed from the courtroom by Deputy Harville after Final Argument has concluded, but before the Ruling was announced.  Respondent made several loud statements as he was being escorted from the courtroom regarding his right to remain in the courtroom and regarding his status as an officer of the Court.  Deputy Harville did not testify at hearing.

"15.  Once outside the courtroom, Respondent became increasingly loud and upset.  He failed to obey the instruction of Deputy Milam to remain calm.  He attempted to re-enter the courtroom in disobedience to Milam's instruction to remain outside the courtroom until the proceeding was concluded. Respondent's voice tone became increasingly loud.  He asserted his claimed right to be inside the courtroom and demanded re-entry.  He threatened to sue.  The Respondent made slight, unintentional physical contact with Deputy Milam in his effort to regain entry into the courtroom.  Respondent's purpose in seeking re-entry was not to thank Judge Pearson, but rather to speak with Taylor.  Respondent's testimony in that regard is neither credible nor logical.

"16.  Approximately ten (10) people, including at least one (1) child, gathered in the hallway outside the courtroom to observe Respondent's interactions with Deputy Milam at the door and subsequently at the arrest location further down the hallway.

"17. Respondent, immediately before walking away from the Courtroom door to go to the office of the Administrative Judge, directed profane language at Milam, calling him an "ass" at which point Respondent was informed that he was under arrest. This was the only use of profanity by Respondent during these events.

"18. Respondent briskly walked away from Milam and did not heed either repeated advice that he was under arrest or requests to stop. Respondent did not stop. Deputy Milam followed Respondent for approximately thirty (30) to forty (40) yards in the courthouse hallway and forcibly effectuated the arrest. Respondent pulled away from Deputy Milam and was forced to the ground. Respondent struggled. Deputy Milam warned Respondent that if Respondent did not stop his resistance that pepper spray would be used, at which point Respondent stopped any resistance and was placed in handcuffs.

"19. Respondent was arrested and charged with Disorderly Conduct and with Resisting Arrest.

"20. Following arrest, Respondent initially refused to provide identifying information and was detained in the courthouse lock-up for approximately twenty (20) minutes until he provided his driver's license.

"21. Respondent's contentions concerning use of unnecessary physical force during his arrest and subsequent processing by courtroom personnel or law enforcement agents are exaggerated. He suffered no credible physical injury.

"22. Respondent called Deputy Harville a "Nazi." Harville was the sole Caucasian involved in relevant events and all remaining court personnel appear to be African–American. Respondent is African–American.

"23. The Court finds Milam's hearing testimony to be somewhat embellished concerning Respondent's behavior, and further finds his Statement of Probable Cause to be the more accurate recitation of events. The Court finds Wimbush's testimony to be greatly embellished and that of Harris to be confused as to chronology.

"24. Criminal charges proceeded to the jury trial in *State v. Mahone*, CJ10–1582 before The Honorable James Lombardi, Associate Judge of the Prince George's Circuit Court on September 28, 2010. At the close of the State's case, Disorderly Conduct and Resisting Arrest charges were dismissed on Motion for Judgment of Acquittal.

"25. Neither Mahone's client nor either party engaged in proceedings before Judge Pearson on February 1, 2010 were prejudiced by Respondent's words or behavior, either in the courtroom or thereafter.

"26. No actions by Judge Pearson or any courtroom personnel were motivated by, or the result of, racial considerations."

From these Findings of Fact, Judge Quirk concluded that the respondent violated MLRPC 8.4(d), but not MLRPC 8.4(b). With regard to the latter, he concluded, "[b]ased upon factual determinations made herein by application of the clear and convincing evidence standard, Bar Counsel has failed to adduce proof sufficient to meet its burden of establishing a Rule 8.4(b) violation." The facts bearing on this issue were those found in paragraphs 16, in which Judge Quirk determined that the respondent's "interactions" with the arresting officer was observed by "[a]pproximately ten (10) people including at least one child," who "gathered" for that purpose, and 18, in which Judge Quirk concluded that the respondent "did not heed either repeated advice that he was under arrest or requests to stop," and when the arresting officer forcibly effectuated the arrest, "pulled away" and "struggled," of the Findings of Fact. In drawing that conclusion, Judge Quirk noted the finding of the criminal court trial judge that the State had failed to prove its disturbance of the peace charge, brought pursuant to Maryland Code (2002, 2012 Repl.Vol.) § 10–201(c)(2)–(3) of the Criminal Law Article ("CL"), and that failure required dismissal of the resisting arrest charge, brought pursuant to CL § 9–408(b)(1) (2004, 2012 Repl.Vol.). Although recognizing that the criminal disposition is not dispositive, given the different burdens of proof, Judge Quirk

nevertheless found the criminal court decision to be "not without consideration or relevance."

Turning to the MLRPC 8.4(d) violation, Judge Quirk's conclusion that the respondent violated that Rule was premised on the behavior in which he found the respondent to have engaged, both within and outside the courtroom, which he described as "willful and [engaged] in the actual presence of members of the public, both inside and outside the courtroom." The offending behavior inside the courtroom consisted of the respondent disrupting the proceedings by, in addition to making multiple attempts to speak to his client during final argument, refusing to keep still or lower his voice and remaining standing after being advised to be seated. This behavior, moreover, Judge Quirk determined, was the basis for the respondent's removal from the courtroom, which he found to be proper, even though it was done without the specific direction of Judge Pearson.

Judge Quirk described the behavior in which the respondent engaged once outside the courtroom and which he concluded was prejudicial to the administration of justice as becoming "increasingly angry and upset;" refusing to heed instructions to remain calm; attempting to re-enter the courtroom; engaging in a "door handle tugging match" with the arresting officer, despite being admonished not to do so; and using "loud, inappropriate and profane language in the hallway." Indeed, it was, as a result of this use of profane language and directing it at the arresting officer, calling him an "ass," that the respondent was arrested.

Following his arrest, Judge Quirk found that the respondent "refused to heed" the advice that he was under arrest or the command to stop and surrender, instead walking away from the officer. When physically accosted, he struggled and did not cease resistance until threatened with the use of pepper spray. In addition, the respondent's failure to cooperate, refusing, for a time, to provide identification, calling one of the officers a "Nazi" and his "attempt[s] to use his position as an attorney to his benefit, repeatedly stating, 'I'm an officer of the court' and

threatening to sue while refusing to comply with the explicit directives of the Bailiff and Deputies," were offered as additional factors in the judge's conclusion that the respondent acted in a manner prejudicial to the administration of justice.

Judge Quirk also made findings with regard to factors in mitigation and aggravation, including those findings as "III. *Evidence Regarding Remedial and Mitigating Factors.*" Having acknowledged the aggravating factor that the respondent "has previously been reprimanded by the Court of Appeals for courtroom conduct, *Atty. Griev. Comm'n. v. Mahone,* 398 Md. 257[, 920 A.2d 458] (2007), having violated Rule 8.4(d)," he noted that the respondent self-reported his arrest to the petitioner. Judge Quirk also found:

> "Respondent's actions were not caused by any dishonest or selfish motive. He acted, in his estimation, as a zealous advocate for his client in hastening to Upper Marlboro to an unknown proceeding at the invitation of his client's opponent, to hopefully obtain custody of a two year-old child for his client, who had previously lost custody. His verbal interaction with the Judge was courteous. Upon hearing of Judge Pearson's letter to the Attorney Grievance Commission, Respondent promptly apologized. Judge Pearson accepted.
>
> "The matter of *State v. Daniel Q. Mahone,* CJ 10–1582 in the Circuit Court for Prince George's County went to trial on September 28, 2010 before The Honorable James Lombardi with a jury. All charges were dismissed at the conclusion of the State's case upon Respondent's Maryland Rule 4–324 Motion[.]"

The petitioner took no exceptions to the Findings of Fact; however, it excepts to Judge Quirk's failure to conclude that the respondent violated MLRPC 8.4(b). The petitioner's complaint is that Judge Quirk's findings of fact lead inexorably to the conclusion that the respondent violated CL § 10–201(c)(2) and (3)[7] and CL § 9–408(b),[8] which are the underlying bases

---

7. CL § 10–201(c)(2) and (3) provide:

for the Rule 8.1(b) violation charge. It reasons that Judge Quirk's statement on p. 28 of the Findings of Fact and Conclusions of Law, that respondent's behavior, in and out of the courtroom, was willful and in the actual presence of members of the public, although made in support of his conclusion that the respondent violated MLRPC 8.4(d), was nevertheless a factual finding equally applicable to the Rule 8.4(b) charge. That finding, coupled with the court's findings set out in finding 14, but especially finding 15, describing the respondent's refusal to "heed" advice and directions he was given by the arresting officer; finding 16, relating to who was present to witness the interaction and arrest of the respondent; and finding 18, pertaining to the respondent's response to being placed under arrest, sufficed to establish each of the

---

"(c)(2) A person may not willfully act in a disorderly manner that disturbs the public peace.

"(3) A person may not willfully fail to obey a reasonable and lawful order that a law enforcement officer makes to prevent a disturbance to the public peace."

Citing *Dziekonski v. State,* 127 Md.App. 191, 198, 732 A.2d 367, 370 (1999); *Briggs v. State,* 90 Md.App. 60, 67–68, 599 A.2d 1221, 1224 (1992) (in turn citing *In re Nawrocki,* 15 Md.App. 252, 258, 289 A.2d 846, 850 (1972)), the petitioner proffers: "[t]he elements of disorderly conduct [CL § 10–201(c)(2)] are: (1) willfully acting in a disorderly manner to the disturbance of the public peace; (2) acting in the actual presence of other persons; (3) those other person(s) may have been disturbed or provoked to resentment; and (4) acting in a public place or public conveyance."

With regard to § 10–201(c)(3), the petitioner submits that all that is required to be proved is that the respondent "willfully fail[ed] to obey a reasonable and lawful order that a law enforcement officer makes to prevent a disturbance of the public peace."

8.  CL § 9–408(b) provides, as relevant:

"(b) A person may not intentionally:

"(1) resist a lawful arrest[.]"

Citing *Purnell v. State,* 375 Md. 678, 695, 827 A.2d 68, 78 (2003); *In re Nawrocki,* 15 Md.App. 252, 263, 289 A.2d 846, 852–53 (1972); *Streeter v. State,* 5 Md.App. 435, 439, 248 A.2d 119, 121 (1968); *Carwell v. State,* 2 Md.App. 45, 49, 232 A.2d 903, 905 (1967), the petitioner sets out the elements of resisting arrest, pursuant to CL § 9–408(b) as: "(1) an arrest by a law enforcement officer in the performance of his duties; (2) the arrest was lawful; (3) refusal to submit to the arrest and use of force to resist the arrest; (4) knowledge that an officer of the law was attempting to make the arrest and (5) the resistance was intentional."

criminal charges and, thus, the predicate for the MLRPC violation. The petitioner concedes, as it must, that no finding was made "that the members of the public were disturbed," proffering in view of that omission that "logic requires a conclusion of same."

Acknowledging that Judge Quirk recognized that an acquittal in a criminal trial does not preclude a finding that the attorney violated a disciplinary rule, the petitioner nevertheless believes that he erroneously "consider[ed] the findings and conclusions of the court in Respondent's criminal trial." This belief is based, apparently, on Judge Quirk's statement, when discussing the Rule 8.4(b) violation, that "Judge Lombardi's decision is not without consideration or relevance in these proceedings." The petitioner contends that it is proof that Judge Quirk considered and used that decision to conclude that it did not meet its burden of proof and, as important, that Judge Quirk did not comply with the direction given by Maryland Rule 16–757, to make findings of fact and draw conclusions of law based on the evidence presented and not to draw inferences from collateral matters.

The petitioner recommends that the respondent be suspended from the practice of law for a period of 90 days. As support for this recommendation, it relies on four aggravating factors: the respondent's prior discipline; his failure to acknowledge the "wrongful nature of his conduct, specifically, "Respondent has not acknowledged that his intentional use of abusive language towards law enforcement officers assigned to maintain order in the courthouse was inappropriate;"[9] his substantial experience in the practice of law; and the illegal conduct in which the respondent engaged[10] and *Attorney Grievance Comm'n. v. Alison,* 317 Md. 523, 565 A.2d 660

---

**9.** As the findings of fact reflect, the respondent did apologize to Judge Pearson, once he learned that he had filed this complaint, thus, the petitioner's focus on the law enforcement officers.

**10.** Clearly, the applicability of this factor is dependent on the outcome of the petitioner's exceptions.

(1989), which it offers as a comparable case for purposes of determining the proper sanction.

Exceptions were filed by the respondent, as well. His exceptions were not limited to the conclusions of law drawn by Judge Quirk, however. The respondent's first exception is to the absence of a finding or conclusion. He included in his answer to the disciplinary petition, as a kind of "affirmative defense," a representation that he had apologized to Judge Pearson, who accepted the apology, thereby indicating that he considered the matter resolved. Noting that Judge Quirk did not make a finding on the point, the respondent contends that he is entitled to a favorable disposition of this matter, as he has "sustained his burden by proving 'a matter of mitigation or extenuation ... by a preponderance of evidence' as required by Md. Rule 16–757(b)."

The respondent's second exception is to "the Court's Finding that Petitioner has proved the Averments of the Petition by Clear and Convincing Evidence." As he sees it,

"The core allegations in the Petition for Disciplinary or Remedial Action pleading misconduct by the Respondent are those contained in paragraphs six (6), seven (7) and eight (8). An examination of the record reveals that the testimony does not present 'clear and convincing evidence' that Respondent committed the actions described in paragraph six (6), seven (7) and eight (8) of the Petition."

By reference to the transcript, the respondent maintains, as to the allegations in paragraph six (6), that the findings are not supported by the record. He is persuaded by the absence of any reference in the transcript to the loudness of the speech or sound, except on one occasion, when Judge Pearson asked someone, presumably the respondent, to "keep your voice down a little bit." As the respondent puts it:

"In response to this allegation, Respondent contends that the transcript of the proceeding before Judge Pearson ... reveals an absence of any loud speech by Respondent. The allegation of 'speaking loudly' is not supported because loud speech would have been recorded by the court's stenogra-

pher. There is absolutely no indication of any content of the loud speech which allegedly occurred before the court."

The respondent also contends that the allegations in paragraph six (6) that he was passing notes to his client and was asked not to do so by "bailiffs and sheriffs" is not supported by the record. For support, he relies on his own testimony to the contrary, that he passed one note and was told by the bailiff that anything passed must go through him, and the testimony of the bailiff that he says asked him not to pass the note, which confirmed his testimony.

In paragraph seven (7) of the disciplinary petition, it is alleged:

"After being removed to the hallway, Respondent had an altercation. He yelled insults at a deputy sheriff, using vulgar language and causing a disturbance."

In challenging the adequacy of the evidence to support these allegations, the respondent relies on his assessment of the testimony of the arresting officer, based on his reading of the transcript of the disciplinary proceedings and that of the criminal trial. He concludes that the arresting officer's testimony was contradictory, primarily as it related to the disturbance aspect of the matter, the gathering of a crowd, the number of people, its composition, etc., and, therefore, not credible. With regard to the allegation that he used vulgar language and caused a disturbance, the respondent avers, without any specificity:

"There is no credible evidence that any public citizen was disturbed by Respondent. Finally, Respondent has freely admitted that he utilized the term 'ass' to refer to Deputy Milam. However, the definition of ass is utilized to refer to a stupid person and is a term utilized in everyday speech."

To the allegations of paragraph eight (8), pertaining to resisting arrest, the respondent responds:

"An examination of the Statement of Probable Cause and Deputy Milam's testimony of the criminal trial reveals that Respondent was arrested because of pure speech. Moreover, the Bar Investigation concluded that Respondent was

arrested because of his statement to Deputy Milam that he was an 'ass.' The arrest in total was illegal and the illegal touching of Respondent by Deputy Harville preceded the illegal arrest by Deputy Milam."

The third exception filed by the respondent is to a finding made by the court during its summarization of the testimony of the various witnesses, in Section 1 B of the Findings of Fact and Conclusions of Law, that the respondent was "escorted" from the courtroom "while Judge Pearson was hand-writing the Final Protective Order and before the court announced the Oral Ruling." He argues that he was in the courtroom and heard the entire oral ruling and was removed when he attempted to approach his client. He maintains that the transcript of the proceedings confirms that is so. The exception is also to the accuracy of the use of the word, "escort," to describe his removal. On the contrary, the respondent, relying on the arresting officer's testimony, submits that he was "grabbed" and walked out.

The gravamen of the respondent's fourth exception is a challenge to Judge Quirk's credibility determination with respect to the arresting officer, Deputy Milam. He notes that Judge Quirk had a number of concerns about the arresting officer's testimony: his reporting of the sequence of events was confused, and his testimony at the disciplinary proceedings differed, "in pertinent part," from his testimony at the criminal trial and his written Statement of Probable Cause. Having detailed Judge Quirk's concerns with the arresting officer's testimony, which the respondent characterizes as "chameleon-like," the respondent laments:

"Respondent fails to comprehend how the court can reflect upon Deputy Milam's having testified against Respondent at the criminal trial and having embellished his testimony and yet credit his testimony in this case. Respondent's freedom was at stake in the criminal trial and Milam clearly has asserted fictitious details throughout the Respondent's ordeal with the bar charges and the criminal charges. The question looms large how do you credit any testimony of

Deputy Milam when clearly Deputy Milam has no hesitancy to make up details."

Similarly, the respondent's fifth exception challenges the evidentiary value of the hearing testimony provided by both Deputy Wimbush and Bailiff Harris. In Judge Quirk's evidentiary summation, contained within his Findings of Fact and Conclusions of Law, the hearing judge described Deputy Wimbush's hearing testimony pertaining to events that occurred outside of the courtroom as "far less credible and greatly embellished from the version of events recited in his written statement created on the date of the incident." Additionally, Judge Quirk described Bailiff Harris' hearing testimony regarding events that occurred outside of the courtroom as "far more expansive than, but without inconsistency from, his written version of events contemporaneously made." [11] Accordingly, the respondent contends that the hearing testimony of both Deputy Wimbush and Bailiff Harris demonstrates a lack of clear and convincing evidence presented by the petitioner.

In his final exception, without explaining why, the respondent excepts to Judge Quirk's findings in paragraphs 14, 15, 16, 17, 18, 20, 21, 22 and 26. The respondent also challenges, without further elaboration, the refusal to admit his Exhibit 6, which he says contained the admission of a party opponent.

This Court, in the exercise of its original and complete jurisdiction over attorney disciplinary proceedings, *Attorney Grievance Comm'n. v. Maignan,* 390 Md. 287, 292, 888 A.2d 344, 347 (2005); *Attorney Grievance Comm'n. v. James,* 385 Md. 637, 654, 870 A.2d 229, 239 (2005); *Attorney Grievance Comm'n. v. O'Toole,* 379 Md. 595, 604, 843 A.2d 50, 55 (2004); *Attorney Grievance Comm'n. v. Glenn,* 341 Md. 448, 470, 671 A.2d 463, 473 (1996); *Attorney Grievance Comm'n. v. Kent,* 337 Md. 361, 371, 653 A.2d 909, 914 (1995); *Attorney*

---

11. Paragraph twenty-three (23) of the hearing judge's Findings of Fact states, "The Court finds Wimbush's testimony to be greatly embellished and that of Harris to be confused as to chronology."

*Grievance Comm'n. v. Joehl,* 335 Md. 83, 88, 642 A.2d 194, 196 (1994), reviews the findings of fact and conclusions of law of the Circuit Court judges, to whom it delegates the responsibility of conducting disciplinary proceedings. The hearing judge's findings must be supported by clear and convincing evidence. *Attorney Grievance Comm'n. v. Gore,* 380 Md. 455, 468, 845 A.2d 1204, 1211 (2004). Maryland Rule 16–759 is a critical tool in the discharge of this responsibility.

■■■■■ Maryland Rule 16–759(b) provides:

"(1) Conclusions of Law. The Court of Appeals shall review de novo the circuit court judge's conclusions of law.

"(2) Findings of Fact.

"(A) If No Exceptions Are Filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any.

"(B) If Exceptions Are filed. If exceptions are filed, the Court of Appeals shall determine whether the findings of fact have been proven by the requisite standard of proof set out in Rule 16–757(b). The Court may confine its review to the findings of fact challenged by the exceptions. The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."

Explicating this Rule, we said in *Attorney Grievance Comm'n. v. Goff,* 399 Md. 1, 27–28, 922 A.2d 554, 569–70 (2007), *reinstatement granted,* 400 Md. 97, 928 A.2d 795 (2007):

"Thus, we review de novo the hearing court's conclusions of law. Rule 16–759(b)(1); *Attorney Grievance Comm'n. v. Mahone,* 398 Md. 257, 265–66, 920 A.2d 458, 463, 2007 WL 1051696, *4 (2007); *Attorney Grievance Comm'n. v. Mba-Jonas,* 397 Md. 690, 700, 919 A.2d 669, 675, 2007 WL 816836, *4 (2007); *Attorney Grievance Comm'n. v. Hodgson,* 396 Md. 1, 6–7, 912 A.2d 640, 644 (2006); *Attorney Grievance Comm'n. v. McLaughlin,* 372 Md. 467, 493, 813 A.2d 1145, 1160 (2002); *Attorney Grievance Comm'n. v. Joehl,* 335 Md. 83, 88, 642 A.2d 194, 196 (1994) (noting that the ultimate

decision as to whether an attorney has engaged in professional misconduct rests with this Court). When the factual findings are not clearly erroneous and the conclusions drawn from them are supported by the facts found, exceptions to conclusions of law will be overruled. *Mba–Jonas,* 397 Md. at 700, 919 A.2d at 675; *Attorney Grievance Comm'n. v. Manger,* 396 Md. 134, 146–147, 913 A.2d 1, 8 (2006). Moreover, a hearing court's findings of fact will not be overruled unless we determine that they are clearly erroneous. Mahone, 398 Md. at 265, 920 A.2d at 463; *Guida,* 391 Md. at 50, 891 A.2d at 1095. 'Weighing the credibility of witnesses and resolving any conflict in the evidence are tasks proper for the fact finder.' *State v. Stanley,* 351 Md. 733, 750, 720 A.2d 323, 331 (1998)."

*See also Attorney Grievance Comm'n. v. Tanko,* 408 Md. 404, 418–19, 969 A.2d 1010, 1019–20 (2009); *Attorney Grievance Comm'n. v. Harris,* 403 Md. 142, 155–56, 939 A.2d 732, 740 (2008) (noting that, "[a]s to the hearing judge's conclusions of law, such as whether the provisions of the M[L]RPC were violated, our consideration is essentially *de novo.*"); *Attorney Grievance v. Zuckerman,* 386 Md. 341, 363, 872 A.2d 693, 706 (2005) *reinstatement granted sub nom. Attorney Grievance Comm'n. v. Zuckerman,* 387 Md. 326, 875 A.2d 132 (2005). Indeed, in such proceedings, we deem the factual findings of the hearing judge to be *prima facie* correct, which is why we will not disturb them on review unless they are proven to be clearly erroneous. *Attorney Grievance Comm'n. v. Ward,* 394 Md. 1, 15, 904 A.2d 477, 486 (2006); *Attorney Grievance Comm'n. v. Kahn,* 290 Md. 654, 678, 431 A.2d 1336, 1349 (1981). As to the legal conclusions, "[a]ny conclusions of law made by the hearing judge, such as whether provisions of the MLRPC were violated, are subject to our *de novo* review." *O'Toole,* 379 Md. at 604, 843 A.2d at 55 (citing *McLaughlin,* 372 Md. at 493, 813 A.2d at 1160).

We shall overrule the petitioner's exceptions. As we have seen, the elements of disorderly conduct, proscribed by CL § 10–201(c)(2) and (3), are well settled. Under subsection (c)(2), the defendant must willfully, in a public place or public

conveyance and in the actual presence of other persons, act in a disorderly manner to the disturbance of the public peace of those other persons. Subsection (c)(3) requires that the defendant willfully fail to obey a reasonable and lawful order of a law enforcement officer, made to prevent a disturbance of the public peace. With regard to the latter we have made clear:

> "[t]he gist of the crime of disorderly conduct under Sec. 123 of Art. 27, as it was in the cases of common law predecessor crimes, is the doing or saying, or both, of that which offends, disturbs, incites, or tends to incite, a number of people gathered in the same area.... [I]t is conduct 'of such a nature as to affect the peace and quiet of persons who may witness the same and who may be disturbed or provoked to resentment thereby.' Also, it has been held that failure to obey a policeman's command to move on when not to do so may endanger the public peace, amounts to disorderly conduct."

*Drews v. State*, 224 Md. 186, 192, 167 A.2d 341, 344–45 (1961), *vacated on other grounds and remanded*, 378 U.S. 547, 84 S.Ct. 1900, 12 L.Ed.2d 1032 (1964), *judgments reinstated and reaffirmed*, 236 Md. 349, 204 A.2d 64 (1964), *appeal dismissed and cert. denied*, 381 U.S. 421, 85 S.Ct. 1576, 14 L.Ed.2d 693 (1965) (citing *Bennett v. City of Dalton*, 69 Ga.App. 438, 25 S.E.2d 726, *appeal dismissed*, 320 U.S. 712, 64 S.Ct. 197, 88 L.Ed. 418 (1943)). Thus,

> "there must be a sufficient nexus between the police command and the probability of disorderly conduct. These commands cannot be 'purely arbitrary and ... not calculated in any way to promote the public order.' [*Drews*, 224 Md.] at 193, 167 A.2d at 344 (quoting *People v. Galpern*, 259 N.Y. 279, 181 N.E. 572, 574 (1932)). See also *Harris v. State*, 237 Md. 299, 303, 206 A.2d 254, 256 (1965) (holding that '[a] failure to obey a reasonable and lawful request by a police officer fairly made to prevent a disturbance to the public peace constitutes disorderly conduct.')."

*Dennis v. State*, 342 Md. 196, 201, 674 A.2d 928, 930 (1996), *cert. granted, judgment vacated*, 519 U.S. 802, 117 S.Ct. 40,

136 L.Ed.2d 4 (1996), *judgment reinstated,* 345 Md. 649, 693 A.2d 1150 (1997).

To be sure, Judge Quirk found that the respondent's conduct was willfully committed, in a public place, the courthouse, and that it was in the actual presence of members of the public. As the petitioner recognizes, however, he did not find that the respondent's conduct disturbed the public peace, or provoked the members of the public, in whose presence it occurred. Nor does it appear, and the record does not support, that the command to desist was for the purpose of preventing a disturbance of the peace and, in any event, the court did not so find. While there may have been sufficient evidence on the basis of which the judge could have found the required element, his decision not to so find is not clearly erroneous; he was not required to do so and we may not, because logic and our own inclination may lead us to that conclusion, substitute what we would have found, were we the fact-finder, for the facts the fact-finder actually found. *State v. Stanley,* 351 Md. 733, 750, 720 A.2d 323, 331 (1998).

It is well settled that a person has the right to resist an unlawful arrest. *See Dennis,* 342 Md. at 212, 674 A.2d at 936; *Barnhard v. State,* 325 Md. 602, 614, 602 A.2d 701, 707 (1992); *Rodgers v. State,* 280 Md. 406, 410, 373 A.2d 944, 946 (1977), *cert. denied,* 434 U.S. 928, 98 S.Ct. 412, 54 L.Ed.2d 287 (1977); *Williams v. State,* 204 Md. 55, 64, 102 A.2d 714, 718 (1954); *Sugarman v. State,* 173 Md. 52, 57, 195 A. 324, 326 (1937). Resistance includes the right to use "any reasonable means, including force, to effect [an] escape." *Barnhard,* 325 Md. at 614, 602 A.2d at 707. Accordingly, we also overrule the petitioner's exception to the failure to find that the respondent resisted a lawful arrest.

We do not perceive the comments made by Judge Quirk about the criminal case and its findings and ruling to be an abdication of his responsibility in this disciplinary matter to make findings of fact, based on the evidence presented in those proceedings, or as an indication that he relied on the findings and the decision rendered in the criminal case to

make his decision. Rather, we accept judge Quirk's characterization, that the ruling "is consistent as to the proponent, herein Bar Counsel, failing to meet [his] burden of proof."

Turning to the respondent's exceptions, we agree that Judge Quirk did not directly make a finding in response to the respondent's suggestion that the case was mooted by the complaining party accepting his tendered apology. Nevertheless, that suggestion was answered, albeit during the discussion of the MLRPC 8.4(d) violation and courtroom security, and clearly so:

> "Judge Pearson implicitly allowed his bailiff and the deputies to handle the situation created by Respondent. Respondent's reliance on the fact that Judge Pearson did not reprimand him or directly order him removed from the courtroom as evidence that his behavior was appropriate is without merit. Furthermore, Respondent has been on specific notice that a judge's decision not to hold a Respondent in contempt or otherwise censure the Respondent is not a defense.

(Citing *Mahone*, 398 Md. at 268, 920 A.2d at 464). The exception is overruled.

To prevail on his exceptions pertaining to paragraph 6 of the disciplinary petition, the respondent must show, not simply that the transcript of the proceedings does not reflect the conduct about which the petition complains and the hearing court found, but that it irrefutably would have, had the conduct or behavior actually occurred, and that the findings as to the passing of notes and the refusal to desist when advised to do so were clearly erroneous. The evidence of the transcript that the respondent proffers and on which he exclusively relies to refute the finding that he spoke loudly falls woefully short of the mark. To be sure, the transcript does reflect one reference to the volume of speech. That reference, however, was a statement by Judge Pearson, making a "request" that the respondent keep his voice down just a little bit. Significantly, before that statement, the transcript does not reflect or report that the respondent was speaking loudly.

That, and the fact that, as the respondent concedes, the transcript does not otherwise address the volume at which arguments or statements were made during the proceedings demonstrate the weakness of the respondent's argument. It follows, therefore, that the transcript simply does not prove what the respondent has offered it to prove.

■■■ With regard to the "passing of notes" and the respondent's failure to desist, after being asked not to do so by "bailiffs and deputy sheriffs," the respondent relies on his testimony that he passed but one note and ceased that activity when told by the bailiff to do so, and the testimony of that bailiff, which confirmed his account. In other words, the respondent posits that Judge Quirk got the credibility call wrong. It is well settled, however, that the court was not obliged to credit the respondent's testimony or that of the bailiff. *Attorney Grievance Comm'n. v. Monfried*, 368 Md. 373, 388, 794 A.2d 92, 100 (2002); *Attorney Grievance Comm'n. v. Kerpelman*, 288 Md. 341, 363, 420 A.2d 940, 950 (1980), *cert. denied*, 450 U.S. 970, 101 S.Ct. 1492, 67 L.Ed.2d 621 (1981). Indeed, we have said that "[t]he hearing judge is in the best position to evaluate the credibility of the witnesses and to decide which one to believe[.]" *Monfried*, 368 Md. at 390, 794 A.2d at 101. In fact, the hearing judge may "pick and choose which evidence to rely upon." *Attorney Grievance Comm'n. v. Fezell*, 361 Md. 234, 253, 760 A.2d 1108, 1118 (2000) (citing *Attorney Grievance Comm'n. v. Sheridan*, 357 Md. 1, 17, 741 A.2d 1143, 1152 (1999), in turn citing *Attorney Grievance Comm'n. v. Kemp*, 303 Md. 664, 674, 496 A.2d 672, 677 (1985)).

In excepting to paragraph 7 of the disciplinary petition, the respondent, relying on his own credibility and lamenting the many contradictions in the arresting officer's testimony, both in the disciplinary proceedings and in the criminal trial, denies there was an "altercation." He also disputes that he used "vulgar language and caus[ed] a disturbance." For the same reason as his exception to paragraph 6, this exception must be overruled, credibility being the province of the hearing judge.

Other than baldly stating that "[a]n examination of the Statement of Probable Cause and Deputy Milam's testimony at the criminal trial reveals that Respondent was arrested because of pure speech," the respondent offers nothing to justify this Court's sustaining of his exception to paragraph 8 of the disciplinary petition. Accordingly, it is overruled.

The respondent's exception 3 is to the findings made by Judge Quirk in Section I B of his Findings of Fact. The one to which he specifically excepts is the finding that "while Judge Pearson was hand-writing the Final Protective Order, and before the court announced the Oral Ruling, . . . Mahone was escorted from the courtroom . . ." As we have seen, however, the findings of fact directly pertinent to the Rules violations found in this case were set out in Section II. Inasmuch as the findings in Section I B are, at best, tangential, and adds little, if anything, to the findings that inform the Rule violations found, this exception, too, is overruled.

Exception 4 concerns the confusion of the sequence of events as reported by the arresting officer and the recognition of that fact by Judge Quirk, while exception 5 seems only to agree with Judge Quirk that the testimony of Deputy Wimbush was embellished during these proceedings and, therefore, was less credible. Both challenge the ultimate credibility determination of the hearing judge. Indeed, with regard to exception 4, the respondent questions openly, "how do you credit any testimony of Deputy Milam when clearly Deputy Milam has no hesitancy to make up details." We shall not substitute our judgment for the judgment of Judge Quirk, to whom we delegated the credibility determinations. The exceptions are overruled.

The respondent's final exception is, as noted, simply a statement that he excepts to Judge Quirk's findings in certain paragraphs and to the exclusion of certain evidence he offered. That is the extent of the argument offered in support. We shall overrule the exception.

We turn now to the consideration of the appropriate sanction. We approach this task fully cognizant that the

purpose, the goal, of attorney discipline is well settled, "to protect the public, not to punish the erring attorney." *Goff,* 399 Md. at 30, 922 A.2d at 571, *reinstatement granted,* 400 Md. 97, 928 A.2d 795 (2007). *See Mba–Jonas,* 397 Md. at 702, 919 A.2d at 677; *Attorney Grievance Comm'n. v. Rees,* 396 Md. 248, 254, 913 A.2d 68, 72 (2006); *Attorney Grievance Comm'n. v. Pennington,* 387 Md. 565, 596, 876 A.2d 642, 660 (2005). This purpose and goal are achieved when the sanctions "are commensurate with the nature and gravity of the violations and the intent with which they were committed." *Attorney Grievance Comm'n. v. Stein,* 373 Md. 531, 537, 819 A.2d 372, 375 (2003). We approach each matter on its own merits, focusing on the facts and circumstances involved, *Attorney Grievance Comm'n. v. Gisriel,* 409 Md. 331, 385, 974 A.2d 331, 362 (2009); *Attorney Grievance Comm'n. v. Powell,* 328 Md. 276, 300, 614 A.2d 102, 114 (1992); *Kemp,* 303 Md. at 680, 496 A.2d at 680, including any mitigating factors, *Attorney Grievance v. Atkinson,* 357 Md. 646, 656, 745 A.2d 1086, 1092 (2000); *Attorney Grievance v. Gavin,* 350 Md. 176, 197– 98, 711 A.2d 193, 204 (1998), and with an eye toward the promotion of general and specific deterrence, *Attorney Grievance Comm'n. v. Sliffman,* 330 Md. 515, 529, 625 A.2d 314, 321 (1993), the protection of the integrity of the legal profession, *Attorney Grievance Comm'n. v. Cassidy,* 362 Md. 689, 698, 766 A.2d 632, 637 (2001), and furthering the public's confidence in the legal profession. *Attorney Grievance Comm'n. v. Christopher,* 383 Md. 624, 639, 861 A.2d 692, 701 (2004); *Stein,* 373 Md. at 537, 819 A.2d at 375; *Powell,* 369 Md. at 474, 800 A.2d at 789. We have also made clear that "[t]he severity of the sanction to be applied is measured by the egregiousness of the misconduct under the particular facts and circumstances of the case." *Gisriel,* 409 Md. at 386, 974 A.2d at 363 (citing *Attorney Grievance Comm'n. v. Montgomery,* 318 Md. 154, 165, 567 A.2d 112, 117 (1989) ("the extent of the discipline to be applied is generally dependent upon the severity of the misconduct and the particular facts and circumstances surrounding it.")). Other relevant considerations are "the attorney's prior grievance history[,] . . . the attorney's remorse for

the misconduct, and the likelihood of the conduct being repeated." *Attorney Grievance Comm'n. v. Post*, 379 Md. 60, 71, 839 A.2d 718, 724–25 (2003) (internal citations omitted).

The petitioner, as indicated, posits that there are four factors that underlie its recommendation and relies for support for its recommendation on *Attorney Grievance Comm'n. v. Alison*, 317 Md. 523, 565 A.2d 660 (1989). In *Alison*, the attorney was suspended for 90 days for "engaging in a course of professional and private conduct that was inappropriate, rude, vulgar, insulting, occasionally dangerous and sometimes criminal." The conduct to which the Court referred consisted of nine separate incidents, occurring over a period of more than one year. Moreover, the petitioner's recommendation depends on a finding of criminal conduct, as its reliance on *Alison* and its stated conclusion—that the respondent's actions "were disrespectful to the court, disruptive to court administration and in violation of the Maryland Criminal Code"— demonstrate.

*Alison* is not this case. First, we have overruled the petitioner's exceptions. Therefore, there are no violations of the criminal code or unlawful conduct. Second, Judge Quirk's mitigation finding, that the respondent's "verbal interaction with the Judge was courteous" and that he apologized upon learning of the complaint by the judge, belies the petitioner's conclusion that the respondent was disrespectful to the judge. Third, we do not believe that mounting a defense is the same as refusing to acknowledge wrong-doing. Fourth, this is a single incident, although occurring in two places, that had a duration of minutes, rather than years.

The respondent's conduct, as found by Judge Quirk, is not to be condoned, however. That he has once before been reprimanded for in-court or court-related improper conduct disqualifies him for that sanction. A 30 day suspension, effective thirty days from the date of this opinion, we believe, is the appropriate sanction, under these circumstances.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS**

COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–671(b), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST DANIEL QUINN MAHONE.

Judge HARRELL joins in the judgment only.